690 A.2d 1233

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Patrick A. DUNNE III, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 13, 1997.

Filed March 14, 1997.

524

Richard A. Joyce, Public Defender, Lebanon, for appellant.

David P. Wingert, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before POPOVICH, SAYLOR and HESTER, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lebanon County following

appellant's conviction on the charges of driving while under the influence of a controlled substance [1] and possession of drug paraphernalia.[2] Herein, appellant contends that the lower court erred in failing to suppress the results of his urine test and that the evidence was insufficient to sustain his conviction on the charge of driving while under the influence of a controlled substance.[3] We affirm.

The facts in this case are not in dispute, and they are as follows: On April 14, 1993, at approximately 3:06 a.m., Police Officer Michael DiPalo was on routine patrol in Palmyra, Pennsylvania. While on patrol, Officer DiPalo passed a vehicle traveling in the opposite direction on Main Street and observed that the vehicle's headlights were not activated. Officer DiPalo made a U-turn and searched for the vehicle. Shortly thereafter, he located the vehicle parked in the 200 block of West Main Street.

The officer approached the vehicle and saw that the driver, appellant, was seated in the driver's seat. He asked appellant for his driver's license, registration and insurance card. Appellant fumbled with his wallet, opened the vehicle's door and handed the items to the officer. Appellant then became belligerent and asked the officer why he was "bothering him." Officer DiPalo asked appellant to exit the vehicle. As appellant was exiting, Officer DiPalo noticed that appellant's eyes were glassy and that he was staggering. The officer then instructed appellant to perform three field sobriety tests, all of which appellant failed. The officer also administered a preliminary breath test (PBT). The PBT indicated an alcohol level of %.088.

Appellant was arrested and transferred to the Hershey Medical Center for chemical testing. On the way to the hospital, Officer DiPalo noticed that appellant was mumbling about high pitched radio frequencies and observed that appel-

1. 75 Pa.C.S.A. § 3731(a)(2).

2. 35 P.S. § 780–113(a)(32).

3. Appellant does not contest the sufficiency of the evidence in regard to his conviction on the charge of possessing drug paraphernalia.

lant was evidencing rapid mood swings. Believing that "something other than just alcohol was involved," Officer DiPalo determined that both a blood and urine test were necessary. The officer informed appellant of the implied consent laws under Section 1547 of the Motor Vehicle Code and then requested that he submit to a blood and urine test. Appellant verbally agreed to submit to the tests. The hospital then presented appellant with a written consent form indicating that chemical tests were going to be administered and that the tests' results would be released to the police. Appellant signed the hospital's consent form.

Appellant first submitted to a blood test. While the nurse was obtaining the blood sample, Officer DiPalo noticed track marks on appellant's arm, including one which appeared to be "fresh." The officer then heard appellant tell the nurse that the track marks were the result of his intravenous use of narcotics. Appellant then provided a urine sample. After appellant provided the blood and urine samples, he was transported to the police station. At the station, the police searched appellant's body and his vehicle. The searches revealed two hypodermic syringes. The police later received appellant's blood and urine test results. The blood test revealed a blood alcohol level of %.015 and the urine test revealed the presence of amphetamines and methamphetamines.

Following a jury trial, appellant was convicted of driving while under the influence of a controlled substance and possession of drug paraphernalia. He filed a post-verdict motion for a new trial which was denied by the lower court. He was sentenced to a term of ninety days to twenty-three months incarceration. This appeal followed.

■ Appellant's first argument is that the lower court erred in failing to suppress the results of his urine test.

When reviewing an order entered by the suppression court, we must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal

conclusions drawn therefrom. Where the evidence has not been suppressed, it is our duty to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as remains uncontradicted. When evidence supports the trial court's findings of fact, we will not reverse unless the conclusions drawn from those facts are erroneous.

*Commonwealth v. Yedinak,* 450 Pa.Super. 352, 676 A.2d 1217, 1220 (1996) (citations omitted). In this case, the facts are not in dispute. Rather, the issue on appeal is the propriety of the trial court's legal conclusions drawn from those facts. Relying on *Com., Dept. of Transp. v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987) (plurality Opinion by Zappala, J.), and its progeny, appellant argues that Officer DiPalo did not have reasonable grounds to request that he submit to a urine test after he had already provided a blood sample, and, therefore, the testing of his urine was an unconstitutional search. The trial court determined that this case was distinguishable from *McFarren* since appellant voluntarily consented to the urine test and, therefore, determined that the urine test results were admissible. We agree.[4]

In *McFarren,* our supreme court examined Section 1547(a) of the Motor Vehicle Code and determined that the police may not request a defendant to take a second post-arrest chemical test unless the police establish circumstances which support the reasonableness of the second test.[5] "To

4. We note that appellant has not challenged the propriety of the stop of his vehicle by Officer DiPalo, his arrest or the searches related to the seizures of the hypodermic syringes. Moreover, he has not challenged the propriety of the trial court's ruling admitting into evidence his PBT results or blood test results. According, we will not review the constitutionality of these police actions on appeal.

5. 75 Pa.C.S.A. § 1547(a) provides, in relevant part, that:

(a) *General rule.*—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to *one or more chemical tests of breath, blood or urine* for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating, or in actual physical control of the move-

hold otherwise would subject an individual to 'unreasonable searches and seizures' in violation of the Constitution." [6] *McFarren*, 525 A.2d at 1188. However, as the trial court correctly noted, *McFarren* concerned an administrative matter where the defendant's driver's license was *McFarren* never addressed the situation where the driver *consents* to more than one test in a criminal case. *See Commonwealth v. Weaver*, 384 Pa.Super. 231, 558 A.2d 97 (1989) (questioning the applicability of *McFarren* in criminal cases where the driver consents to the chemical tests). In this case, appellant did not refuse to take the second chemical test. Rather, we find that he expressly and voluntarily consented to take both chemical tests, and, therefore, *McFarren* does not require the suppression of appellant's urine test results in this case.[7]

 In order for consent to be valid, it must be "unequivocal, specific, and voluntary." The appellant must have intentionally relinquished or abandoned a known right or privilege. *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994). "The burden is upon the Commonwealth to prove by clear and convincing evidence that valid consent was given by appellant." *Commonwealth v. Blasioli*, 454 Pa.Super. 207, 685 A.2d

ment of a motor vehicle: (1) while under the influence of alcohol or a controlled substance or both. . . . (emphasis added).

**6.** It is well-settled that the testing of a person's blood or urine is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Eisenhart*, 531 Pa. 103, 611 A.2d 681 (1992). It is also well-settled that the constitutions protect against unreasonable searches and seizures effectuated under the color of state action. *Commonwealth v. Price*, 406 Pa.Super. 166, 593 A.2d 1288 (1991), *aff'd*, 543 Pa. 403, 672 A.2d 280 (1996). In this case, the blood and urine samples were taken by a nurse acting at the request of Officer DiPalo for the sole purpose of gathering incriminating evidence against appellant. Accordingly, we find that the nurse acted as an agent of the Commonwealth in collecting the blood and urine samples, thereby invoking the protections of the Fourth Amendment and the Pennsylvania Constitution. *Commonwealth v. Danforth*, 395 Pa.Super. 1, 576 A.2d 1013 (1990), *aff'd*, 532 Pa. 152, 615 A.2d 308 (1992).

**7.** We note that our supreme court's decision in *McFarren* is a plurality opinion. As such, we are not bound by the rules of law enunciated therein. However, even if we were to adopt *McFarren*'s reasoning in this case, we find that the urine test results were admissible.

151, 156 (1996) (citations omitted). The determination as to whether consent has been given voluntarily is a question of fact which must be determined in each case from the totality of the circumstances. *Commonwealth v. Mancini,* 340 Pa.Super. 592, 490 A.2d 1377 (1985). This Court has held that the following factors should be considered in determining whether consent was given voluntarily: "the setting in which the consent was obtained; what was said and done by the parties present; and the age, intelligence, and educational background of the person consenting." *Blasioli,* 685 A.2d at 156 (citations omitted).

■■ Here, Officer DiPalo informed appellant that he was being arrested for "unsafe driving." He then requested that appellant accompany him to the Hershey Medical Center for chemical testing and told appellant that the results of any chemical testing would be used against him in a criminal proceeding. *Danforth, supra.* Appellant agreed to accompany Officer DiPalo to the hospital for chemical testing. Upon arrival at the hospital, appellant was specifically informed of the implied consent laws under Section 1547 of the Motor Vehicle Code. After explaining the law and appellant's rights, Officer DiPalo asked appellant if he would submit to a blood and urine test. Appellant responded affirmatively in response thereto. Moreover, the record reveals that appellant signed a written consent form which the hospital gave to him prior to the chemical testing. The consent form indicated that the results of any blood or urine samples would be released to the police for "police purposes" and indicated that appellant had been informed of his right to refuse to submit to the chemical tests. At trial, appellant admitted that he "underwent a series of tests voluntarily." N.T. 12/10/1993 p. 140. There has been no allegation that appellant was physically or mentally unable to understand the meaning of his consent to take the blood and urine tests or that appellant's consent was invalid due to police coercion, duress or deception. *Mancini, supra* (defendant was drinking beer prior to giving his consent to search but there was no evidence that he was incapable of making an informed decision); *Commonwealth v. Walsh,* 314 Pa.Super.

65, 460 A.2d 767 (1983) (no voluntary consent where consent was given under duress). From the surrounding circumstances, we find that appellant's consent to the blood and urine tests was unequivocal, specific and voluntary. *See Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988) (where defendant was advised of his rights and read and signed a consent form, he voluntarily consented to the search); *Commonwealth v. Chiesa*, 329 Pa.Super. 401, 478 A.2d 850 (1984) (same). Therefore, the trial court did not err in failing to suppress the results of the urine test.[8]

Appellant's next contention is that the evidence was insufficient as a matter of law to sustain his conviction on the charge of driving while under the influence of a controlled substance. "In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699, 702 (1989) (citations omitted).

In order to prove that appellant was guilty of driving while under the influence of a controlled substance, the Commonwealth needed to show (1) that appellant drove, operated or was in actual physical control of the movement of his vehicle, (2) while he was under the influence of a controlled substance which rendered him incapable of safe driving. *Yedinak, supra;* 75 Pa.C.S.A. § 3731(a)(2). There is no dispute that the Commonwealth satisfied the first element of this offense. That is, appellant does not dispute that he operated or was in actual physical control of his vehicle on April 14, 1993. At issue is whether the Commonwealth satisfied the

8. Appellant argues that this Court cannot determine that his consent was valid since Officer DiPalo did not have reasonable grounds to request that he submit to the urine test. This Court has held that the lack of probable cause, or in this case reasonable grounds, is just one factor to be considered in determining whether consent was valid. *Mancini, supra.* Even if we were to determine that under the dictates of *McFarren* Officer DiPalo did not have reasonable grounds to request the urine test, it would not preclude the finding of a valid consent.

second element by proving that appellant was under the influence of a controlled substance to a degree which rendered him incapable of safe driving. Appellant argues that this element was not satisfied because the Commonwealth failed to offer expert testimony linking his symptoms to the use of a controlled substance. He concedes that there was direct evidence that he had used illegal drugs, i.e., his urine tested positive for amphetamines and methamphetamines. However, he argues that there was no competent medical evidence that his drug use influenced his driving. Intertwined with appellant's contention that expert testimony was necessary is his argument that the trial court erred in permitting Officer DiPalo to offer his opinion as to appellant's drug-intoxication and his ability to drive safely. Appellant alleges that drug-intoxication is "outside of the realm of observation of ordinary people," and, therefore, lay witnesses' opinions concerning drug-intoxication are impermissible. We disagree.

In *Commonwealth v. Yedinak*, 450 Pa.Super. 352, 676 A.2d 1217 (1996), the appellant was tried and convicted of driving while under the influence of a controlled substance (marihuana). On appeal, the appellant argued that the trial court erred in permitting the arresting officer, a non-medical expert, to opine that the appellant was under the influence of a controlled substance to a degree rendering him incapable of safe driving. This Court found that the trial court did not err in permitting the arresting officer to state his opinion and that expert testimony was not needed. We specifically held that "[a]lthough this Court has never addressed whether lay opinion testimony is admissible to prove drug-induced intoxication, we find no basis upon which to distinguish opinion testimony of drug-induced intoxication from opinion testimony of alcohol-induced intoxication where the witness is personally familiar with the effects of narcotics." *Yedinak*, 676 A.2d at 1221 (citing *People v. Williams*, 44 Cal.3d 883, 245 Cal.Rptr. 336, 751 P.2d 395 (1988) (if a sufficient foundation is laid, lay opinion testimony as to whether a person is under the influence of narcotics is admissible)). Although requested to do so, we declined to accept the Vermont Supreme Court's holding in

*State v. Rifkin,* 140 Vt. 472, 438 A.2d 1122 (1981), that expert testimony is needed to provide the connection between the symptoms observed by police and the drug allegedly influencing the appellant's driving. *But See Yedinak, supra* (Beck, J., dissenting) (urging this Court to adopt the Vermont Supreme Court's rationale in *Rifkin* ).

 Applying our holding in *Yedinak* to the facts of this case, we find that the trial court did not err in permitting Officer DiPalo to opine that appellant was under the influence of a controlled substance to a degree rendering him incapable of safe driving. The officer's opinion was based on specific and articulable observations of appellant's physical appearance and behavior, it was helpful to the trier of fact, and a proper foundation was laid to show that Officer DiPalo was familiar with the effects of narcotics.[9] *Yedinak, supra.* We further find that expert testimony was not needed to link appellant's symptoms to the use of a controlled substance. *Yedinak, supra.* Having made these determinations, we must now decide whether the evidence was sufficient.

At trial, the Commonwealth presented the testimony of Officer DiPalo. Officer DiPalo testified as follows: On April 14, 1993, the officer approached appellant after observing him operating his vehicle without the aid of headlights. While questioning appellant, he noticed that appellant's eyes were his skin was "clammy." Officer DiPalo then asked appellant to exit his vehicle. As appellant was exiting the vehicle, he stumbled and staggered. Officer DiPalo then conducted three field sobriety tests, all of which appellant failed. Appellant was arrested for "unsafe driving," and was immediately transported to the Hershey Medical Center so that a blood and urine test could be conducted. While being transported, appellant exhibited rapid mood swings and mumbled about high pitched radio frequencies. Upon arrival at the hospital, appellant first submitted to a blood test. While the blood was being withdrawn, Officer DiPalo noticed numerous track marks on appellant's arm, including a "fresh" mark, and heard

9. Officer DiPalo testified that his perceptions were informed by his training and his prior drug arrests. *See Yedinak, supra.*

appellant admit that he used illegal narcotics. Appellant then provided a urine sample. After the blood and urine tests were completed, appellant was transported to the police station where his person and vehicle were searched. The searches revealed two hypodermic syringes. In addition, appellant's urine tested positive for the presence of illegal narcotics.[10] Finally, Officer DiPalo opined that based on his observation of appellant, and his training and experience, appellant was under the influence of a controlled substance to a degree which rendered him incapable of safe driving when he was arrested.[11] Based on the officer's testimony, we find that the evidence was sufficient to sustain appellant's conviction under Section 3731(a)(2). *Yedinak, supra.*

For all of the foregoing reasons, we affirm the judgment of sentence.

Affirmed.

10. Appellant's urine sample tested positive for amphetamines and methamphetamines which are classified as controlled substances. 35 P.S. § 780–104(2)(iii)(1), (4).

11. We note that Officer DiPalo opined that appellant's impairment resulted from drug-induced intoxication and not from alcohol-induced intoxication. The evidence, including appellant's low PBT and blood test results, supports this conclusion.