J-A24022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FRANK DAVID MELOGRANA, JR. | |
| Appellant | No. 3170 EDA 2014 |

Appeal from the Judgment of Sentence of October 20, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0005737-2013

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.: **FILED NOVEMBER 09, 2015**

Frank Melograna, Jr. appeals the October 20, 2014 judgment of sentence, which the trial court imposed following Melograna's conviction of driving under the influence of alcohol ("DUI"), 75 Pa.C.S. § 3802(d)(2). Herein, Melograna challenges, *inter alia*, the trial court's denial of his pre-trial suppression motion, as well as the sufficiency of the Commonwealth's evidence against him. For the reasons set forth below, we affirm the judgment of sentence.

The trial court has summarized the factual history of this case as follows:

> On April 16, 2013, Officer William Lion ("Officer Lion") of the Upper Dublin Police Department was on duty, in full uniform,

---

[*] Retired Senior Judge assigned to the Superior Court.

driving a marked patrol car. At approximately 12:51 P.M., Officer Lion observed a Ford pick-up truck, operated by [Melograna], stopped in the middle of a two-lane public roadway on Susquehanna Road in Upper Dublin Township, Montgomery County, Pennsylvania. Although the truck was stopped, the truck was not disabled. The truck's brake lights were on, which indicated that [Melograna's] foot was on the brake and the truck was still running with the key in the ignition. As Officer Lion approached the driver['s] side of the vehicle, he observed a semiconscious [Melograna] shaking in a manner similar to a seizure with his eyes open. [Melograna] was unresponsive to Officer Lion's questions. Because [Melograna] appeared incapable of turning off his truck, Officer Lion attempted to turn off the truck but was dragged backwards when the truck began rolling in reverse. Officer Lion eventually managed to employ the emergency brakes and turn off the vehicle.

Officer Lion requested Emergency Medical Services ("EMS") to aid [Melograna]. Officer Lion monitored [Melograna] until EMS arrived at the scene. When EMS transported [Melograna] inside the ambulance, Officer Lion noticed three prescription medication bottles inside [Melograna's] car in plain view. Officer Lion inspected the medication bottles. The medication labels listed the three prescription bottles as: (1) Soma; (2) Percocet (trade name Oxycodone and Acetaminophen); and (3) Alprazolam (trade name Xanax). Officer Lion noticed that [Melograna's] Percocet prescription for 120 pills was filled on April 1, 2013, fifteen days prior, but the bottle only contained 1.5 pills. Upon Officer Lion's inspection of the Alprazolam prescription, he noticed that the bottle contained two differently colored pills. Although [Melograna] was not placed under arrest at the scene, Officer Lion followed [Melograna] to Abington Hospital for the purpose of administering a blood test based on his belief that [Melograna] was driving under the influence of the three prescribed medications to a degree which rendered [Melograna] incapable of safe driving.

[Melograna] arrived at Abington Hospital via EMS at approximately 1:32 P.M. Officer Lion noticed that [Melograna] was now able to respond to the hospital staff's questions. However, his responses were delayed, mumbled and unclear. Officer Lion read the **O'Connell** Warnings[1] to [Melograna], who nodded his head in a manner that Officer Lion deemed as his consent to undergo a chemical blood test. [Melograna] never signed the DL-26 Implied Consent Form. Officer Lion indicated

that [Melograna] was "unable to sign the form due to the fact that [Melograna] was shaking." [Melograna's] medical report evidences that at about 1:50 P.M., [Melograna's] blood was drawn by a hospital technician at the direction and request of Officer Lion. At about 1:54 P.M., [Melograna's] medical report shows that [Melograna] was cognizant enough to respond to the medical staff's questions by providing them with accurate and coherent information regarding his name and birthdate. [Melograna] was later charged with [DUI].

[1] The phrase "*O'Connell* Warnings" means the officer must specifically inform a motorist that his driving privileges will be suspended for one year if he refuses chemical testing and that the rights provided by the United States Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), do not apply to chemical testing. *See Commonwealth, Dept. of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 877-78 (Pa. 1989); *see also Commonwealth, Dept. of Transp. v. Ingram*, 648 A.2d 285, 290 (Pa. 1994); *Commonwealth, Dept. of Transp. v. Scott*, 684 A.2d 539, 540-41 (Pa. 1996).

Trial Court Opinion ("T.C.O."), 1/22/2015, at 1-3 (some citations modified). The blood tests revealed the presence of the prescription medications in higher than expected amounts in Melograna's bloodstream.

Prior to trial, Melograna filed a motion seeking, *inter alia*, the suppression of the evidence resulting from what Melograna contended was an unconstitutional blood draw. On July 1, 2014, following a suppression hearing, the trial court denied the motion. On September 3, 2014, following a bench trial, the trial court convicted Melograna of DUI. On October 20, 2014, the trial court sentenced Melograna to seven days to six months in jail.

Thereafter, Melograna filed a notice of appeal, prompting the trial court to issue an order directing Melograna to file a concise statement of

errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 24, 2014, Melograna timely complied with the court's directive. On January 22, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Melograna raises the following three questions for our review:

I.    Whether the trial court erred in denying [Melograna's] motion to suppress where police drew [Melograna's] blood, in contravention to the dictates of the Constitutions of the United States and of the Commonwealth of Pennsylvania, without [Melograna's] consent, without obtaining a warrant, and without exigent circumstances?

II.   Whether the evidence at trial was insufficient to prove [Melograna] guilty beyond a reasonable doubt where the substances found in [Melograna's] blood were medications prescribed to him at stable, chronic doses and the forensic toxicologist for the Commonwealth's witnesses testified only that there was a possibility that [Melograna] was unable to safely drive, operate, or be in actual physical control of the movement of the vehicle?

III.  Whether 75 Pa.C.S. § 3802(d)(2) is unconstitutionally void for vagueness as it criminalizes the taking of prescribed medication in the manner in which they were prescribed?

Brief for Melograna at 4 (some capitalization and punctuation altered for consistency and clarity).

In his first issue, Melograna challenges the trial court's denial of his suppression motion. Our standard of review for such claims is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only

- 4 -

the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

**Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

Melograna argues that the results from the blood test should have been suppressed because the blood draw, itself, was unconstitutional. Melograna maintains that the United States Supreme Court's recent decision in **Missouri v. McNeely**, 133 S.Ct. 1552 (2013), fundamentally altered the manner in which law enforcement may secure blood from a suspected intoxicated motorist. According to Melograna, **McNeely** held that implied consent laws, such as the one that is codified in Pennsylvania at 75 Pa.C.S. § 1547(a)(1), are not *per se* exceptions to the constitutional warrant requirements. Hence, Melograna argues that post-**McNeely** blood draws may only occur upon the knowing and intelligent consent of the motorist, or with a valid search warrant. Here, Melograna's argument goes, because the police did not secure a warrant, the blood draw was only constitutional if Melograna validly consented. He contends that he did not.

In light of Melograna's argument, we necessarily begin by determining whether **McNeely** applies to the instant case. In **McNeely**,

> at approximately 2:08 a.m., a Missouri police officer stopped McNeely's truck after observing it exceed the posted speed limit and repeatedly cross the centerline. The officer noticed several signs that McNeely was intoxicated, including McNeely's bloodshot eyes, his slurred speech, and the smell of alcohol on his breath. McNeely acknowledged to the officer that he had consumed "a couple of beers" at a bar, and he appeared unsteady on his feet when he exited the truck. After McNeely performed poorly on a battery of field-sobriety tests and declined to use a portable breath-test device to measure his blood alcohol concentration (BAC), the officer placed him under arrest.
>
> The officer began to transport McNeely to the station house. But when McNeely indicated that he would again refuse to provide a breath sample, the officer changed course and took McNeely to a nearby hospital for blood testing. The officer did not attempt to secure a warrant. Upon arrival at the hospital, the officer asked McNeely whether he would consent to a blood test. Reading from a standard implied consent form, the officer explained to McNeely that under state law refusal to submit voluntarily to the test would lead to the immediate revocation of his driver's license for one year and could be used against him in a future prosecution. McNeely nonetheless refused. The officer then directed a hospital lab technician to take a blood sample, and the sample was secured at approximately 2:35 a.m. Subsequent laboratory testing measured McNeely's BAC at 0.154 percent, which was well above the legal limit of 0.08 percent.

133 S.Ct. at 1556-57 (citations omitted). McNeely attempted to suppress the results of the blood test, which he contended were secured unconstitutionally because he did not consent to the draw, and because the police did not obtain a search warrant. The case meandered through the court system until the United States Supreme Court granted *certiorari* on the question of "whether the natural dissipation of alcohol in the bloodstream

establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." *Id.* at 1568.

The Court first recognized that the Fourth Amendment mandates that, when reasonably practicable, police must obtain a valid search warrant before they can conduct an involuntary blood draw. Of course, in *McNeely*, the blood draw was involuntary, and the police did not obtain a warrant. The Court, therefore, had to determine whether the police could obtain the blood via the exigent circumstance exception to the warrant mandate. *Id.* at 1558.[1] Specifically, the Court considered whether the natural dissipation of alcohol within the bloodstream created a *per se* exigency that would permit police officers to conduct warrantless blood draws, regardless of whether the suspected driver consented to the draw.

Ultimately, the Court elected not to adopt a categorical approach, instead requiring courts to evaluate similar situations on a case-by-case basis and to employ a totality of the circumstances approach. *Id.* at 1561. The Court offered the following explanation for rejecting a *per se* exception in DUI cases:

---

[1]   As the Court explained, "[o]ne well-recognized exception . . . applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S.Ct at 1558 (quoting *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011)).

Regardless of the exact elimination rate, it is sufficient for our purposes to note that because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results. This fact was essential to our holding in [***Schmerber v. California***, 384 U.S. 757 (1966)], as we recognized that, under the circumstances, further delay in order to secure a warrant after the time spent investigating the scene of the accident and transporting the injured suspect to the hospital to receive treatment would have threatened the destruction of evidence.

But it does not follow that we should depart from careful case-by-case assessment of exigency and adopt the categorical rule proposed by the State and its *amici*. In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so. We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test. That, however, is a reason to decide each case on its facts, as we did in ***Schmerber***, not to accept the "considerable overgeneralization" that a *per se* rule would reflect.

***Id.*** at 1561 (citations omitted).

The Court's holding, that the Fourth Amendment is better served by a case-by-case totality of the circumstances evaluation, was based upon the fact that a categorical approach both would include situations where police reasonably could have gotten a warrant, as well as situations where exigent circumstances truly required the police to act immediately without a warrant. A case-by-case approach best balanced the suspected driver's Fourth Amendment rights with the realities that law enforcement officials face when attempting to collect evidence that naturally dissipates.

Having set forth **McNeely's** basic holding and underpinnings, we now must ascertain how **McNeely** impacts the case *sub judice*. Contrary to Melograna's contentions, **McNeely** has no bearing upon his case.[2] **McNeely** only implicates the Fourth Amendment's requirements when the police command a medical professional to draw blood when the motorist has not consented and when the police have not secured a warrant. When a motorist consents to the blood draw, as Melograna did, or when a motorist refuses the draw and the police do not compel the draw anyway, **McNeely** simply is not applicable.

**McNeely** also did not render implied consent laws unconstitutional. Melograna contends that, post-**McNeely**, implied consent laws cannot function as a *per se* exception to the warrant and probable cause requirements of the Fourth Amendment. The fault with Melograna's argument lies in his continued misinterpretation of the impact that **McNeely** has on his case. **McNeely** simply does not extend to situations in which a

---

[2] Recently, in **Commonwealth v. Myers**, 118 A.3d 1122 (Pa. Super. 2015), we held that **McNeely** does apply in certain situations. In **Myers**, the motorist, who was suspected of DUI, was taken to a hospital, and was given medication that rendered him unconscious and unresponsive. The motorist could not respond to police questioning regarding consent to a blood draw. Without a response, the police ordered the blood draw without consent and without a warrant. Relying upon **McNeely**, we held that the warrantless draw was unconstitutional. The factual circumstances of **Myers** clearly fell within the purview of **McNeely**. Obviously, in the case *sub judice*, Melograna was not unconscious and could respond to the police, and neither **Myers** nor **McNeely** controls.

driver has consented to a blood draw or where the driver has refused consent and where a police officer abides by the refusal and does not pursue the blood draw. In those situations, Pennsylvania's implied consent law applies with full force.

The **McNeely** Court did not address the validity of implied consent laws. The Court only rejected the State's argument that any person who refuses a blood test automatically subjects himself to a nonconsensual blood draw. **McNeely**, 133 S.Ct. at 1568. Pennsylvania's implied consent law does not work that way. Under the implied consent law, a person, by virtue of operating a motor vehicle, impliedly consents to chemical testing, which the police officer may request if he or she has probable cause to believe that the motorist is driving under the influence of alcohol or a controlled substance. Section 1547 in no way authorizes a nonconsensual blood draw if a person refuses. There is a penalty for refusing, to be sure. But, it is not a blood draw against the refusing driver's will. **McNeely** does not impact the validity of our implied consent law in any way.

The crux of Melograna's first argument is that **McNeely** altered the manner in which we must view blood draws that are conducted based upon suspicion of DUI. He argues that, post-**McNeely**, there are only two choices: a valid consent or a warrant. However, as discussed in detail above, that argument is an inaccurate portrayal of **McNeely**'s impact upon this case. **McNeely** requires, in situations in which a person does not, or cannot, consent and the police nonetheless do not obtain a warrant, that

courts determine whether the totality of the circumstances created an exigent circumstance such that the warrant requirement is excused. That is not what occurred here. Therefore, we do not need to consider whether exigent circumstances justified the draw in this case, we need only to review this case under our traditional approach, considering the validity of the consent under our implied consent statute and case law.

> Pursuant to subsection 1547(a)(1):
>
> Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
>> (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock)[.]

75 Pa.C.S. § 1547.[3] To request chemical testing "under § 1547(a)(1), a police officer need only have reasonable grounds to believe that a person was driving under the influence of alcohol [or controlled substances].

---

[3] Subsection (a)(2), which permitted a warrantless blood draw without probable cause of DUI when a motorist was in an accident that caused injury or death to himself or another, was ruled unconstitutional in *Commonwealth v. Kohl*, 615 A.2d 308 (Pa. 1992). That subsection is not at issue in this case, and *Kohl* has no bearing upon our decision. Notably, subsection (a)(1) has never been ruled unconstitutional.

'Reasonable grounds' has been interpreted to mean 'probable cause;' thus, the police officer must have 'knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that a crime has been committed.'" **Commonwealth v. Aiello**, 675 A.2d 1278, 1280 (Pa. Super. 1996) (internal citations omitted); **see Commonwealth v. Jones**, 121 A.3d 524, 527-28 (Pa. Super. 2015), *reargument denied* (Sept. 30, 2015).

Melograna does not argue that the police did not have probable cause to request the blood draw. He argues only that his consent was involuntary and, therefore, invalid.

> In order for consent to be valid, it must be "unequivocal, specific, and voluntary." The appellant must have intentionally relinquished or abandoned a known right or privilege. **Commonwealth v. Gibson**, 638 A.2d 203 (Pa. 1994). "The burden is upon the Commonwealth to prove by clear and convincing evidence that valid consent was given by appellant." **Commonwealth v. Blasioli**, 685 A.2d 151, 156 (Pa. Super. 1996) (citations omitted). The determination as to whether consent has been given voluntarily is a question of fact which must be determined in each case from the totality of the circumstances. **Commonwealth v. Mancini**, 490 A.2d 1377 (Pa. Super. 1985). This Court has held that the following factors should be considered in determining whether consent was given voluntarily: "the setting in which the consent was obtained; what was said and done by the parties present; and the age, intelligence, and educational background of the person consenting." **Blasioli**, 685 A.2d at 156 (citations omitted).

**Commonwealth v. Gorbea-Lespier**, 66 A.3d 382, 387 (Pa. Super. 2013) (citations modified) (quoting **Commonwealth v. Dunne**, 690 A.2d 1233, 1236 (Pa. Super. 1997)).

The trial court in this case held that Melograna's "self-impairment" was insufficient to render Melograna incapable of validly consenting to the blood draw. We agree with the court's conclusion, as well as the court's description of the relevant facts of this case, which follow:

> In the present case, [Melograna] was initially semiconscious and unresponsive due to prior use of his prescription drugs. Even though his responses were delayed, unclear and mumbled, [Melograna] was able to respond to questions when he arrived at the hospital. When Officer Lion read the **O'Connell** warnings, [Melograna] was not unconscious. After hearing the warnings, [Melograna] nodded his head in a manner which Officer Lion reasonably deemed as his consent to submit to chemical blood testing. Although [Melograna] did not sign the DL-26 Implied Consent Form, . . . there is no requirement that voluntary consent be manifested by a signed written consent form. At 1:54 P.M., four minutes after [Melograna's] blood was drawn, [Melograna's] medical report evidences that [Melograna] was cognizant enough to accurately respond to the medical staff's questions regarding his name and birthday.

T.C.O. at 9. The trial court's factual findings were supported by the record, and its legal conclusion that Melograna validly consented to the blood draw was correct. Melograna is not entitled to relief.

In his second issue, Melograna contends that the evidence presented by the Commonwealth at trial was insufficient as a matter of law to prove him guilty of DUI. Our standard of review in a sufficiency challenge is as follows:

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was

established beyond a reasonable doubt. We may not weigh the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.

Lastly, the finder of fact may believe all, some or none of a witness's testimony.

***Commonwealth v. Priest***, 18 A.3d 1235, 1239 (Pa. Super. 2011) (citations omitted).

Pursuant to 75 Pa.C.S. § 3802(d)(2), "[a]n individual may not drive, operate, or be in actual physical control of the movement of a vehicle . . . [if the] individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle."

Melograna argues that the evidence was insufficient to support his conviction because his own witness, Dr. Gary Lage, a forensic toxicologist, testified that the amount of prescription medication in Melograna's bloodstream was consistent with the dosage prescribed by Dr. John Telegadis, Melograna's physician. Melograna contends that this testimony provided an alternative interpretation of the evidence, which conflicted with the Commonwealth's toxicologist, who only testified that there was a possibility that the prescription medication could have rendered him incapable of safely driving his vehicle.

Although framed as a sufficiency challenge, Melograna's argument essentially asks us to second-guess the trial judge's factual determinations,

and to reweigh the evidence. Such an argument is a challenge to the weight of the evidence, not its sufficiency. Melograna did not preserve his weight challenge at sentencing or in a timely post-sentence motion. Thus, any such contention is waived. *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012).

To the extent that Melograna presents a viable sufficiency challenge, it is meritless. Melograna was found unresponsive behind the wheel of a truck that was stopped in the center of a two-lane public road. The key was in the ignition. The truck was running, and Melograna's foot was on the brake pedal. When Officer Lion approached the truck, Melograna was shaking, and was unresponsive to Officer Lion's questions. He undeniably was incapable of safely operating the truck. Moreover, Officer Lion found two prescription pill bottles in the vehicle. One bottle contained only one and one-half pills, even though the prescription for one hundred and twenty pills was filled only fifteen days prior. In the other pill bottle, Officer Lion found two different types of pills. Viewing the evidence in the light most favorable to the Commonwealth, and granting the Commonwealth all reasonable inferences drawn from that evidence, the trial court was free to conclude that Melograna had not taken his medication as directed by his physician, that he had supplemented his medication with another prescription drug, and that the combination of substances rendered him incapable of safely driving his truck. The evidence was sufficient to support the conviction.

In his final issue, Melograna attempts to argue that the DUI statute under which he was convicted was unconstitutional because, according to Melograna, the statute is unconstitutionally vague in that it criminalizes too much otherwise legal behavior. This issue was not preserved in the first instance before the trial court, and, therefore, is waived.

Melograna did not challenge the constitutionality of the statute in a pre-trial motion, or in any other manner before his trial commenced. Instead, Melograna's counsel stated during sentencing that "I would suggest to the Court that this statute is one which I intend to challenge constitutionally, because what I believe it does, it can criminalize absolutely any one of us who take any kind of prescribed substance at the time." Notes of Testimony, 10/20/2014, at 6-7. Notably, Melograna also never pursued the issue in a post-sentence motion.

It is well-settled that "one must object to errors, improprieties or irregularities at the earliest possible stage of the criminal or civil adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." **Commonwealth v. Strunk**, 953 A.2d 577, 580 (Pa. Super. 2008) (quoting **Commonwealth v. English**, 667 A.2d 1123, 1126 (Pa. Super. 1995)). Melograna did not challenge the constitutionality of the DUI statute at the earliest possible stage. Instead, he waited to raise the issue until sentencing, long after the trial court could have responded to a timely-filed challenge. A comment in passing about an issue that a defendant

"intends" to challenge during a sentencing hearing, particularly an issue that does not pertain to sentencing, simply is insufficient to preserve the challenge for appellate review. Consequently, Melograna has waived his final issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2015