J-S62012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROSS MACZKO | |
| Appellant | No. 259 WDA 2015 |

Appeal from the Judgment of Sentence January 27, 2015
in the Court of Common Pleas of Fayette County
Criminal Division at No.: CP-26-CR-0001853-2013

BEFORE:  GANTMAN, P.J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED NOVEMBER 30, 2015**

Appellant, Ross Maczko, appeals from the judgment of sentence imposed on January 27, 2015 following his conviction by a jury of driving under the influence, general impairment, and driving under the influence, highest rate of alcohol; and entering guilty pleas to the summary charges of disregard of traffic lane and careless driving.[1]  On appeal, he challenges the trial court's denial of his pretrial motion to suppress, and motion to dismiss for the Commonwealth's failure to establish a *prima facie* case at the preliminary hearing.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 3309(1), and 3714(a), respectively.

We take the underlying facts and procedural history in this matter from the trial court opinion of April 16, 2015.

At approximately 5:30 A.M. on June 16, 2013, Pennsylvania State Police Trooper Keith C. Abels, and Trooper Adam Sikorski were dispatched to respond to a report that a silver vehicle was driving erratically and possibly struck a guardrail while traveling south on State Road 119 near State Road 982 [in Fayette County, Pennsylvania].[2] While attempting to locate the vehicle, the Troopers were notified by dispatch that the vehicle was located near Brooks Trailers on State Road 119, was sighted again traveling on East Crawford [A]venue with a flat right-front tire, and the vehicle's registration number was GKK4221. Upon responding to East Crawford Avenue, the Troopers were signaled by a white SUV driven by Mr. Brad Hall.[3] Mr. Hall related to the Troopers that he had been following the silver vehicle until the operator pulled into a driveway located at 601 East Gibson Avenue and parked the vehicle on the property. Mr. Hall told the Troopers he observed a white male wearing a fluorescent yellow shirt exit the vehicle and proceed to enter the residence.

Mr. Hall directed Trooper Abels to the residence, and upon approaching the front door, Trooper Abel[s] observed that the keys to the residence were left in the front door lock. After Trooper Abels knocked on the door to the residence, Appellant answered and spoke with Trooper Abels about the multiple 911 calls made in regards to Appellant's vehicle driving erratically on State Road 119. Trooper Abels observed Appellant had glassy, bloodshot eyes, slurred speech, trouble maintaining his balance and a noticeable odor of an alcoholic beverage emanating from his person. Appellant escorted Trooper Abels to a detached garage where Appellant's silver Pontiac Sunfire had been parked.

---

[2] The first report to 9-1-1 came from Mr. Bradley Lohr who testified at the preliminary hearing that he called 9-1-1 after seeing a silver Pontiac driving erratically and hit something. (**See** N.T. Hearing, 3/20/14, 5-7).

[3] Mr. Brad Hall was the second person who called 9-1-1 to report the vehicle. (**See** N.T. Trial, 01/06/15, 25, 29).

Trooper Abels observed the vehicle's GKK4221 registration plate, a flat right front tire, damage to the right front fender, and a disabled marker light.

Trooper Abels administered four (4) field sobriety tests and after completing the tests, determined that Appellant demonstrated characteristics of impairment. Appellant was placed under arrest for suspicion of DUI and transported to Highlands Hospital to undergo blood testing. Medical Technician Jim Olson drew two (2) vials of blood from Appellant's left arm at 6:21 A.M. Appellant's blood sample was analyzed by the Pennsylvania State Police Crime Lab and results showed Appellant's [Blood Alcohol Concentration ("BAC")] to be [0].181 [percent] at the time of extraction.

On December 13, 2013, Appellant filed a lengthy Omnibus Pretrial Motion in the nature of suppression of statements, writ of habeas corpus and for dismissal of the charges. After hearing thereon March 20, 2014, [t]he Honorable Judge Steven Leskinen issued an [o]pinion and [o]rder denying said motion on April 22, 2014.

(Trial Court Opinion, 4/16/15, at 2-3).

On January 6, 2015, this case proceeded to a jury trial. During the trial, the second eye-witness, Mr. Joseph Hall, testified that at approximately 5:30 A.M. he saw Appellant driving erratically, called 9-1-1, and followed Appellant as he drove home. (**See** N.T. Trial, 01/06/15, at 22-29). Mr. Hall further testified that at most a minute or two elapsed between when he saw Appellant park his vehicle and when the police arrived at Appellant's house at 5:45 A.M. (**See id.** at 33, 56).

Following his jury trial, Appellant was convicted of the previously mentioned charges. (**See** Trial Ct. Op., 4/16/15, at 1).

On January 27, 2015, Appellant was sentenced to a period of twenty-three months' intermediate punishment, with ninety days to be served on

house arrest with electronic monitoring.  (***See id.***).  Additionally, Appellant's

operator's license was suspended for eighteen months.  (***See id.*** at 1-2).

On February 11, 2015, Appellant filed a timely notice of appeal.  On

March 20, 2015, Appellant filed his timely Rule 1925(b) concise statement of

matters complained of on appeal.  ***See*** Pa.R.A.P. 1925(b).  The trial court

filed its 1925(a) opinion on April 16, 2015.  ***See*** Pa.R.A.P. 1925(a).

Appellant raises eight questions for our review:

> [1.] Whether the trial court erred in failing to grant the
> [Appellant's] [o]mnibus [p]retrial [m]otion, as a [p]olice
> [o]fficer must have independent knowledge that a traffic
> violation has been committed and not rely on the
> observation of a layperson[?]
>
> [2.] Whether the trial court erred in failing to find that the
> Trooper violated both the Federal and Pennsylvania State
> Constitutions by making warrantless entry into
> [Appellant's] residence and searching for evidence[?]
>
> [3.] Whether the trial court erred in striking any
> statements made prior to the illegal arrest made prior to
> Miranda Rights, which should have been suppressed as all
> said statements were clearly violations of [Appellant's]
> Fifth Amendment [c]onstitutional [r]ights[?]
>
> [4.] Whether the trial court erred in failing to suppress the
> [f]ield [s]obriety [t]est as [i]llegal and the [f]ruits of the
> [t]est should have been suppressed by the trial court as
> there was insufficient reasonable suspicion and was done
> illegally without warrant in [Appellant's] home[?]
>
> [5.] Whether the trial court erred in failing to suppress the
> illegally obtained blood tests as exigent circumstances
> failed to exist to permit warrantless testing of [Appellant's]
> blood[?]
>
> [6.] Whether the trial court erred in permitting the matter
> to proceed to trial as a *prima facie* case failed to exist from
> the outset to establish that [Appellant] was ever incapable

of safe driving, a requirement under 75 Pa.C.S.A. §3802(a)(1)[?]

[7.] Whether the trial court erred in permitting the matter to proceed to trial as a *prima facie* case was never established that [Appellant] ever drove, operated, or was in actual physical control of his vehicle under the influence of alcohol[?]

[8.] Whether the trial court erred in failing to dismiss the case as the Commonwealth failed to provide required discovery to the [d]efense in this case[?]

(Appellant's Brief, at 1-2).

We note that with regard to issue eight, Appellant's Brief states: "[a]s the issue was resolved upon scrutiny of the record, the issue is withdrawn as moot." (**Id.** at 23). Accordingly, we only consider issues one through seven.

We also note that Appellant's arguments on issues one, two, three, five, and six do not include any reference to the certified record. (**See** Appellant's Brief, at 8-15, 18-22); **see also** Pa.R.A.P. 2119(c).[4] Appellant's failure to cite relevant portions of the certified record throughout his brief has impeded our ability to conduct meaningful appellate review. **See** **Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007),

_____

[4] Furthermore, Appellant did not comply with the requirement in Rule 2117(b) that the "statement of the case shall not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties." (Pa.R.A.P. 2117(b)). Appellant's statement of the case is five pages long, the last three of which mainly consist of various arguments in support of Appellant's position. (**See** Appellant's Brief, at 3-7).

*appeal denied*, 982 A.2d 509 (Pa. 2009) ("We shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived."). Accordingly, Appellant waived issues one, two, three, five, and six. Moreover, they would not merit relief.

In his first five issues, Appellant claims that the trial court erred in denying his omnibus pre-trial motion and failing to suppress the evidence offered against him at trial. Specifically, he argues evidence should have been suppressed because: (1) the police did not have independent knowledge that a traffic violation had been committed; (2) the police made warrantless entry into Appellant's residence and searched for evidence; (3) the trial court failed to suppress statements made by Appellant prior to his being read his **Miranda**[5] rights; (4) the trial court erred in failing to suppress the field sobriety test as illegal and all evidence which was a fruit of that test; and (5) the trial court erred in failing to suppress Appellant's blood test which was obtained without a warrant. (**See** Appellant's Brief, at 8-21). As discussed below, we disagree that the trial court erred in denying Appellant's various suppression motions.

Our standard of review for denial of a motion to suppress evidence is well-settled.

---

[5] **Miranda v. Arizona**, 384 U.S. 436 (1966).

> When reviewing suppression motions, we are bound by the suppression court's factual findings that the record supports, but we are not bound by the suppression court's conclusions of law. Thus, we are only to determine whether the suppression court properly applied the law to the facts. Since the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of appellant's evidence as remains uncontradicted when read in the context of the record as a whole.

*Commonwealth v. Strader*, 931 A.2d 630, 633 (Pa. 2007), *cert. denied*, 552 U.S. 1234 (2008) (citations and quotation marks omitted).

We consider issues one and four together because they both concern whether Trooper Abels had the requisite reasonable suspicion to conduct a search. Appellant claims that the trial court should have suppressed evidence from Trooper Abels's search, including the results of the field sobriety test and the fruits of that test because he did not independently observe Appellant operate his vehicle or commit any crime and therefore did not have a reasonable suspicion that Appellant had committed a crime.[6] (*See* Appellant's Brief, at 8-10, 15-17). We disagree.

An investigative detention, which includes administration of field sobriety tests, is lawful if supported by reasonable suspicion. *See Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa. Super. 2010).

_____

[6] Specifically, Appellant argues that Trooper Abels did not observe Appellant "in the acts of any criminal activity unless drinking Southern Comfort with beer in your home's kitchen after an unnerving experience is now a crime in the Commonwealth." (Appellant's Brief, at 16).

To meet the standard of reasonable suspicion, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In addition, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot.

*Id.* at 326 (citations and quotation marks omitted). Furthermore,

To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens. . . . Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue[.]

*Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa. Super. 2005) (citations omitted).

Here, the trial court found that Mr. Hall, one of two eye-witnesses to Appellant's driving, informed Trooper Abels that he called 9-1-1 after seeing Appellant's vehicle going very slowly, leaning towards the driver's side and swerving, and that there was a flat tire and possible damage to the vehicle. (*See* Trial Ct. Op., 4/22/14, at 6; *see also* N.T. Hearing, 3/20/14, at 9, 16). The trial court also found that after Appellant answered the door, Trooper Abels was able to make his own observations, finding that "[Appellant had] a strong odor of an alcoholic beverage about him, 'slurred speech, glassy eyes,' and 'was unsure of his footing.'" (Trial Ct. Op., 4/22/14, at 12 (quoting N.T. Hearing, 3/20/14, at 18, 26)).

Accordingly, we conclude the trial court properly determined that Trooper Abels had reasonable suspicion to investigate Appellant, including the administration of field sobriety tests. Mr. Hall, an identified eye-witness, personally provided information to the Trooper, which led him to believe that criminal activity was afoot, and his own observations led him to reasonably believe that Appellant was intoxicated. *See Barber*, *supra* at 594-95. Therefore, Appellant's first and fourth issues are meritless.

In Appellant's second issue, he claims that the trial court erred by not suppressing evidence obtained by Trooper Abels after a warrantless entry onto his property and search for evidence. (*See* Appellant's Brief, at 10-13). Specifically, Appellant argues that the search was illegal because no exigent circumstances existed which would have justified a warrantless search. (*See id.*). We disagree.

"Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1 § 8 of the Pennsylvania Constitution." *Commonwealth v. Gibbs*, 981 A.2d 274, 279 (Pa. Super 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010) (citation and footnote omitted).

In *Commonwealth v. Simmen*, this Court found that an officer's entry onto an appellant's property was constitutional when that officer saw the appellant's vehicle in the front driveway, noticed damage to the vehicle, and then knocked on the front porch where the appellant's wife gave her

consent for police to enter the home. **See Commonwealth v. Simmen**, 58 A.3d 811, 816-17 (Pa. Super. 2012).

Here, similarly, Trooper Abels entered onto Appellant's front porch and knocked on the front door, which Appellant himself answered. (**See** Trial Ct. Op., 4/16/15, at 2-3; **see also** Trial Ct. Op., 4/22/14, at 10-11). After answering the front door and speaking with Trooper Abels, Appellant voluntarily invited him to enter his detached garage and permitted him to inspect his vehicle. (**See** Trial Ct. Op., 4/22/14, at 10-11).

Accordingly, we conclude the trial court properly determined that Trooper Abels's entry onto Appellant's front porch without a warrant was constitutional because Appellant had no reasonable expectation of privacy on his front porch. **See Simmen**, **supra** at 815. Furthermore, we conclude that the trial court properly decided that the officer's entry into the detached garage was with Appellant's voluntarily given consent and did not require a warrant. **See id.** at 816-17; (**see also** Trial Ct. Op., 4/22/14, at 11). Therefore, Appellant's second issue does not merit relief.

In Appellant's third issue, he claims that the trial court erred when it did not suppress statements he made prior to his receiving his **Miranda** rights. (**See** Appellant's Brief, at 13-15).[7] We disagree.

_____

[7] Appellant's argument does not specify which statements he contends the court should have suppressed, rather he generally states:

*(Footnote Continued Next Page)*

Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of [his] *Miranda* rights. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way. . . . Thus, [i]nterrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. [I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. . . .

\* \* \*

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

Thus, the ultimate inquiry for determining whether an individual is in custody for *Miranda* purposes is whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: the basis for the

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

Appellant was asked how his tire became flat and how he received a dent on the passenger side of his car. . . . Trooper Abels asked these questions for the purpose of evoking incriminating responses . . . . There is simply no other way to interpret the investigation and the information collected should have been suppressed as illegally obtained.

(Appellant's Brief, at 14).

During the preliminary hearing, defense counsel argued that "[t]he charge is driving under influence, so he did say that he was driving, that he had a flat tire. I mean, that was his own admission that he was driving this vehicle recently." (N.T. Hearing, 3/20/14, at 44-45). The trial court concluded that these statements were not incriminating and denied Appellant's motion to suppress. (**See** Trial Ct. Op., 4/22/14, at 12).

- 11 -

detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Commonwealth v. Williams*, 941 A.2d 14, 30-31 (Pa. Super. 2008) (*en banc*) (citations and quotation marks omitted).

Here, the trial court found that when Trooper Abels arrived at Appellant's residence, he walked to the front door, observed a set of keys still stuck in the lock, and knocked. (*See* Trial Ct. Op., 4/22/14, at 4). When Appellant answered, Trooper Abels informed him "he had received multiple calls through 9-1-1 that [Appellant] was driving erratically down Route 119 and that he possibly crashed into something." (*Id.*). Appellant then denied crashing into anything, but acknowledged that someone approached him when he reached his residence. (*See id.*). He then offered to show Trooper Abels his vehicle, which was parked in the detached garage. (*See id.*).

Considering the totality of the circumstances, although Trooper Abels did tell Appellant that he had received calls about Appellant's erratic driving and possible collision, we conclude that he was not in custody for *Miranda* purposes. *See Williams*, *supra* at 31. Trooper Abels questioned Appellant on his front porch after he voluntarily answered his front door. Trooper Abels did not transport Appellant, did not use restraints, and neither showed, threatened, nor used force. *See id.* Under these circumstances, we conclude that Appellant's initial questioning was not so coercive, or his

- 12 -

freedom so curtailed as to constitute a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *See id.* at 33.

Furthermore, Appellant fails to explain how he was prejudiced by the admission of this statement. (*See* Appellant's Brief, at 13-15). Appellant took the stand at his trial and admitted that he was driving his vehicle with a flat tire on the night of June 16, 2013. (*See* N.T. Trial, at 76, 82-83); *see also Commonwealth v. Sepulveda*, 855 A.2d 783, 789-90 (Pa. 2004), *cert. denied*, 546 U.S. 1169 (2006) (concluding appellant was not entitled to relief when trial court did not suppress statement made by him prior to acknowledging *Miranda* rights where appellant offered same statement during testimony at trial). Accordingly, Appellant's third issue lacks merit.

In Appellant's fifth issue, he claims that the trial court should have suppressed the results of his blood test. (*See* Appellant's Brief, at 18-21). Specifically, he argues that the state police obtained the blood sample without a warrant and without exigent circumstances, and although he consented to the blood test, the withdrawal of his blood

> was not consensual[,] he was threatened by the [T]rooper. He was told if he did not consent he would lose his license for a year. . . . [T]he loss of a license, particularly for a man who is an employee of the Commonwealth with a CDL license working for PennDOT, this was a death sentence.

(*Id.* at 18-19 (emphasis omitted); *see id.* at 18-21). We disagree.

"It is well-established that the administration of a blood alcohol test is a search falling within the protection of the Fourth Amendment."

- 13 -

***Commonwealth v. Danforth***, 576 A.2d 1013, 1016 (Pa. Super. 1990),

*affirmed sub nom.* ***Commonwealth v. Kohl***, 615 A.2d 308 (Pa. 1992)

(citations omitted). Generally, searches are considered constitutional only if

conducted pursuant to a search warrant; however, "an actual, voluntary

consent to a search will eliminate the warrant and probable cause

requirements of the Fourth Amendment." ***Id.*** at 1022 (citations omitted).

> [I]n order for consent to be valid, it must be unequivocal, specific, and voluntary. The appellant must have intentionally relinquished or abandoned a known right or privilege. . . . The determination as to whether consent has been given voluntarily is a question of fact which must be determined in each case from the totality of the circumstances. This Court has held that the following factors should be considered in determining whether consent was given voluntarily: the setting in which the consent was obtained; what was said and done by the parties present; and the age, intelligence, and educational background of the person consenting.

***Commonwealth v. Gorbea-Lespier***, 66 A.3d 382, 387 (Pa. Super. 2013)

*appeal denied*, 77 A.3d 1259 (Pa. 2013) (quoting ***Commonwealth v.***

***Dunne***, 690 A.2d 1233, 1236 (Pa. Super. 1997)) (internal citations and

quotation marks omitted).

Here, the trial court found that Trooper Abels read Appellant his

***O'Connell***[8] warnings, he acknowledged that he understood them, and

---

[8] ***Commonwealth, Dep't. of Transp., Bureau of Traffic Safety v. O'Connell***, 555 A.2d 873 (Pa. 1989).

signed the implied consent form. (*See* Trial Ct. Op., 4/22/14, at 4, 14). Because Trooper Abels advised Appellant of his rights pursuant to the *O'Connell* warnings, and because Appellant acknowledged and signed the form indicating that he understood them, we conclude the trial court properly determined that his consent to the blood draw was unequivocal, specific, and voluntary. *See Gorbea-Lespier*, *supra* at 389 (finding that consent to blood test was unequivocal, specific and voluntary where appellant was informed of implied consent laws and signed written consent form). Accordingly, Appellant's fifth issue lacks merit.

Finally, in Appellant's sixth and seventh issues, he claims that the trial court erred in not dismissing his case at the preliminary hearing because the Commonwealth never established a *prima facie* case that he violated 75 Pa.C.S.A. § 3802(a)(1), driving under the influence, or 75 Pa.C.S.A. § 3802(c), driving under the influence, blood alcohol content 0.16 percent or higher. (*See* Appellant's Brief, at 21-23). Specifically, Appellant argues that the Commonwealth failed to establish that he was ever incapable of safe driving or that he ever drove, operated, or was in physical control of his vehicle under the influence of alcohol. (*See id.*). We disagree.

"A finding at a preliminary hearing that sufficient evidence exists to require a defendant to stand trial is not subject to review if there has been a subsequent independent judicial judgment that there is sufficient evidence to require the defendant to stand trial." *Commonwealth v. Ballard*, 460 A.2d 1091, 1092 (Pa. 1983); *see Commonwealth v. Lee*, 662 A.2d 645, 650

(Pa. 1995), *cert. denied*, 517 U.S. 1211 (1996) (holding that defendant's adjudication of guilt rendered moot his allegation that the Commonwealth failed to establish a *prima facie* case at the preliminary hearing); ***see also Commonwealth v. Hess***, 414 A.2d 1043, 1048 (Pa. 1980) ("If in fact it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation before the district justice would have been harmless.").

Here, the jury found Appellant guilty of driving under the influence, and driving under the influence, highest rate of alcohol. (***See*** Trial Ct. Op., 4/16/15, at 1). Accordingly, Appellant's claim in issues six and seven is moot.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2015