**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**Onix GORBEA–LESPIER, Appellee.**

Superior Court of Pennsylvania.

Submitted March 18, 2013.

Filed April 23, 2013.

Stefanie J. Salavanis, District Attorney and James L. McMonagle, Assistant District Attorney, Wilkes Barre, for Commonwealth, appellant.

Demetrius W. Fannick, Kingston, for appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

OPINION BY STEVENS, P.J.

Appellant, the Commonwealth of Pennsylvania (hereinafter "the Commonwealth") appeals from the Order entered in the Court of Common Pleas of Luzerne County on July 18, 2012, granting the Mo-

tion to Suppress Evidence of Onix Gorbea–Lespier (hereinafter "Appellee").[1] Upon our review of the record, we reverse the suppression court's Order and remand for further proceedings.

The record reveals that on July 3, 2011, Trooper James Quiroz, the affiant in the instant matter, accompanied by Trooper John Stravinski, responded to an accident which occurred on PA Route 81 southbound on the off ramp in the area of mile marker 141 in Luzerne County. N.T., 6/29/12 at 5–6.[2] Trooper Quiroz testified that upon his arrival he observed two vehicles, both of which were outside the lane of travel and on the west side of the roadway. The first was a gold vehicle, driven by Appellee, and a female deceased victim was lying facing west in front of that vehicle. *Id.* at 6. The second vehicle, a red Dodge Neon, was located quite a bit off of the roadway in the grassy portion of the berm. *Id.*

Trooper Quiroz spoke to Appellee who revealed he had been at a picnic earlier in the day where he consumed a "couple of alcoholic beverages." *Id.* at 7. Trooper Quiroz detected an odor of alcoholic beverage on Appellee's breath and noticed his speech was slightly slurred. *Id.* at 8. A Preliminary Breath Test (PBT) was administered, and Appellee was placed under arrest for suspicion of driving under the influence. *Id.*

Appellee was transported to Hazleton General Hospital, and Trooper Quiroz stated he personally advised Appellee of the implied consent warnings en route from the scene of the crash to the hospital. *Id.* at 8–9.[3] Specifically, Trooper Quiroz reiterated for the suppression court the information he had provided to Appellee as follows:

> Complied [sic] consent warnings are a police officer will ask someone to submit to a blood, breath, urine test and advise them that refusal to submit to this test would constitute at least a minimum of a 12–month suspension on their license. If they happen to have a refusal prior to the request their license can be suspended for up to 18 months. Subsequently, they would still be—they can still have the highest rate of alcohol charged along with the refusal.
>
> Now, they do not have a right to speak to an attorney or anyone else prior to the testing. If they do request to speak to an attorney or anyone else prior to the testing or they refuse to answer to your submission they would [be] deemed as a refusal and they would be subject to the penalties described above as far as being charged with the highest rate of alcohol.

*Id.* at 9. Appellee told Trooper Quiroz he consented to a blood alcohol content (BAC) test, though he did not sign a written consent form. *Id.* at 10, 16.

1. The Commonwealth has certified within its notice of appeal that the trial court's order terminates or substantially handicaps its prosecution and both the District Attorney and Assistant District Attorney have executed the same. Thus, this appeal is properly before this Court. *See* Pa.R.A.P. 311(d), 42 Pa. C.S.A.; *Commonwealth v. Astillero,* 39 A.3d 353, 354 (Pa.Super.2012).

2. No other witness testified at the suppression hearing.

3. *See Com., Dept. of Transp., Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989) (requiring police officers, when requesting motorists to submit to any number of tests for drugs or alcohol, to inform motorists upon their refusal that refusing to submit to the test results in a one year suspension of their operating license, and that the motorist does not have the right to consult with an attorney or anyone else before submitting to the test).

It took approximately ten to fifteen minutes for Appellee to arrive at Hazleton General Hospital from the crash scene. Appellee was admitted to the hospital, and he submitted to the blood draw. *Id.* at 10. The first blood draw occurred at approximately 0025 hours on July 4th. *Id.* Appellee was again placed in handcuffs and had exited the hospital doors with the officers when the latter received a phone call from Corporal Francis Aigeldinger, the patrol unit supervisor that evening. As a result of that call, Trooper Quiroz informed Appellee that the Assistant District Attorney was requesting a second blood draw and asked whether he would be willing to submit to one. *Id.* at 12–13. Only Troopers Quiroz and Stravinski were with Appellee at this time, and neither officer had a weapon drawn. Appellee consented, and Trooper Quiroz described his demeanor as "very cooperative" at this point in time. *Id.* at 13.

The second blood draw occurred at 0055 hours. Appellee had not been given *O'Connell* warnings again prior to the second test. *Id.* at 21–22. Trooper Quiroz explained those warnings were not reiterated as he believed Appellee had to submit only to the initial test and, therefore, implied consent and *O'Connell* warnings only pertained to the initial blood draw. *Id.* at 23.

Appellee was forty-nine years old at the time of the incident, and appeared to Trooper Quiroz to be of average intelligence and in no way injured such that he would have been rendered unable to consent to either blood test. Appellee was offered medical treatment, though he declined to seek it. *Id.* at 14. Appellee did not eat, drink or smoke anything between the first and second blood tests. *Id.*

On June 4, 2012, Appellee filed his Omnibus Pretrial Motion which contained a motion to preclude preliminary breath test evidence and a motion to suppress the second blood test performed on Appellee; the Commonwealth filed its response thereto on June 25, 2012.

The Commonwealth filed a timely notice of appeal on July 26, 2012.

In its brief, the Commonwealth raises the following issue for our review:

Whether the court properly suppressed the second BAC when the totality of circumstances showed [Appellee's] consent to the second BAC was properly obtained?

Commonwealth's Brief at 4.

On August 6, 2012, the suppression court filed its Statement in Lieu of Opinion wherein it noted that no further Opinion would be forthcoming because it had set forth its reasons for its decision in the Findings of Fact, Conclusions of Law and Order filed on July 18, 2012. The trial court did not require the Commonwealth to file a statement pursuant to Pa.R.A.P. 1925(b).

We note at the outset that the suppression court made no explicit finding of fact in terms of the credibility of Trooper Quiroz either at the motion hearing or in its Order granting suppression as is required by Rule Pa.R.Crim.P. 581(I). However, we need not remand for further findings of fact as to credibility because the trial court's findings of fact largely adopt Officer Quiroz's account, though it found that even accepting Officer Quiroz's description of events, Appellee did not give proper consent to the second blood draw. *See Commonwealth v. Astillero,* 39 A.3d 353, 357 (Pa.Super.2012), *appeal denied,* —— Pa. ——, 48 A.3d 1246 (2012). As such, we analyze the Commonwealth's issue on appeal according to the following clearly defined standard of review:

When the Commonwealth appeals from a suppression order, this Court follows a

clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *See Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa.Super.2008), *appeal denied*, 598 Pa. 787, 959 A.2d 928 (2008). This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. *See id.* In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, "our duty is to determine whether the suppression court properly applied the law to the facts of the case." *Commonwealth v. Ruey*, 586 Pa. 230, 892 A.2d 802, 807 (2006).

*Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa.Super.2013).

 75 Pa.C.S.A. § 1547 entitled **Chemical testing to determine amount of alcohol or controlled substance** provides, in relevant part, that:

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth **shall be deemed to have given consent to one or more chemical tests of breath, blood or urine** for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2)

(relating to illegally operating a motor vehicle not equipped with ignition interlock); or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) **Suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply:

(A) The person's operating privileges have previously been suspended under this subsection.

(B) The person has, prior to the refusal under this paragraph, been sentenced for:

(I) an offense under section 3802;

(II) an offense under former section 3731;

(III) an offense equivalent to an offense under subclause (I) or (II); or

(IV) a combination of the offenses set forth in this clause.

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the pen-

alties provided in section 3804(c) (relating to penalties).

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

75 Pa.C.S.A. § 1547(a), (b) (emphasis added). In addition,

[i]n order for consent to be valid, it must be "unequivocal, specific, and voluntary." The appellant must have intentionally relinquished or abandoned a known right or privilege. *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994). "The burden is upon the Commonwealth to prove by clear and convincing evidence that valid consent was given by appellant." *Commonwealth v. Blasioli*, 454 Pa.Super. 207, 685 A.2d 151, 156 (1996) (citations omitted). The determination as to whether consent has been given voluntarily is a question of fact which must be determined in each case from the totality of the circumstances. *Commonwealth v. Mancini*, 340 Pa.Super. 592, 490 A.2d 1377 (1985). This Court has held that the following factors should be considered in determining whether consent was given voluntarily: "the setting in which the consent was obtained; what was said and done by the parties present; and the age, intelligence, and educational background of

the person consenting." *Blasioli*, 685 A.2d at 156 (citations omitted).

*Commonwealth v. Dunne*, 456 Pa.Super. 523, 690 A.2d 1233, 1236 (1997).

In the matter *sub judice*, the suppression court acknowledged that Appellee had been advised of his *O'Connell* warnings and consented to the initial blood test. Findings of Fact, filed 7/18/12 at ¶ 5. The suppression court further noted that he had consented to the second blood test as well, though it stressed that Appellee received neither his *Miranda*[4] warnings, nor his *O'Connell* warnings a second time. Findings of Fact, filed 7/18/12, at ¶¶ 12–13, 16. Ultimately, the suppression court granted Appellee's motion to suppress the second chemical test and found that *Commonwealth, Dept. of Transp. v. McFarren*, 514 Pa. 411, 525 A.2d 1185, 1188 (1987) and *Karabinos v. Comm., Dept. of Transp.*, 739 A.2d 601 (Pa.Cmwlth.1999) are applicable herein.[5] Specifically, the suppression court reasoned as follows:

7. Although there is no explicit requirement that a police officer who seeks the consent of an individual to be searched always advise the individual that he or she may refuse to give consent to such a search, the absence of the conveyance of this information by the officer is a factor a court may consider in assessing whether the individual's consent to the search was truly volun-

---

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. We note that both *Karabinos* and *McFarren* addressed the implied consent law in the civil context of license suspension, and the appellant in each case had refused a second chemical test. In addition, our Supreme Court's decision in *McFarren, supra*, is a plurality opinion and therefore, we are not bound by the rules of law set forth therein. *See CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372, 376 (1994) (stating "[i]t is axiomatic

that a plurality opinion of this court is without precedential authority, which means that no lower court is bound by its reasoning."). Also, this Court is not bound by the rules set forth in *Karabinos, supra*, as we are not bound by the decisions of a sister court. *See Commonwealth v. Wilson*, 744 A.2d 290, 291 (Pa.Super.1999) (stating Superior Court is not bound by holdings of the Commonwealth Court, but is bound by holdings of the Supreme Court).

tary. *Comm. v. Key,* 789 A.2d 282, 291 (Pa.Super.2001).

8. While *McFarren* held if more than one test is requested (in that case two breathalyzers) the police officer must offer sufficient evidence to establish the reasonableness of such request or it will be determined to be unreasonable and in violation of State Constitution. The Superior Court in *Comm. v. Weaver,* 558 A.2d 97, 384 Pa.Super. 231 (1989) questioned the applicability of *McFarren* in criminal proceedings.

9. In *Karabinos v. Comm., Dept. of Transp.,* 739 A.2d 601 ([Pa.Cmwlth. ]1999), the Commonwealth Court concluded that an officer who requests a licensee to submit to a second chemical test is obligated, under the implied consent law, to inform the licensee that the initial chemical test did not produce valid results.

10. We conclude that *McFarren* and *Karabinos* are applicable to the instant matter only so far as the *O'Connell* warnings may have implicated confusion or affected [Appellee's] subsequent consent.

11. Unless the totality of facts indicate that the consent was the product of express or implied duress or coercion, the mere fact that a police officer did not specifically inform an appellant that he or she could refuse the request will not in and of itself result in a determination that the subsequent search was involuntary. *Comm. v. Moultrie,* 870 A.2d 352 (Pa.Super.2004).

12. The fundamental question is whether [Appellee's] consent was valid given the factors identified above.

13. The Commonwealth has the burden of proof in a suppression hearing to establish that the search and seizure of the blood was proper due to a valid consent.

14. Although not required, we find the Trooper's failure to advise [Appellee] in the context here considered argues against valid consent. Additionally, the record establishes [Appellee] was clearly in custody at the time the request for the second test was made.

15. The Commonwealth has not met its burden.

16. We find, after considering the totality of the circumstances, that the [Appellee's] consent was not voluntary.

Conclusions of Law, filed 7/18/12, at ¶¶ 7–16.

In its brief, the Commonwealth asserts that *Commonwealth v. Dunne,* 456 Pa.Super. 523, 690 A.2d 1233 (1997) is dispositive herein. Therein, an appellant had been arrested and en route to a hospital for chemical testing after he was pulled over for exhibiting behavior of driving under the influence of alcohol and a PBT indicated an alcohol level of %.088. During the drive, the arresting officer heard appellant mumbling about high pitched radio frequencies and remarked he had been having rapid mood swings. Believing that the appellant may have ingested a substance other than alcohol, the officer determined both a blood and urine test were necessary and requested that the appellant submit to both after informing him of the implied consent laws.

The appellant verbally agreed to the tests, and the hospital also presented him with a written consent form, which he signed. The appellant submitted first to the blood test and then provided a urine sample, after which he was transported to the police station. *Id.* at 1234–1235. This Court noted that *McFarren* had never addressed a situation where the driver had consented to more than one test in a criminal case. *Id.* at 1236. After noting that the appellant had not refused to take the

second chemical test, but rather that he expressly and voluntarily consented to take both tests, we found that under the totality of the circumstances, the appellant's consent had been "unequivocal, specific and voluntary," and that the trial court did not err in failing to suppress the results of the urine test. *Id.* In doing so, we stressed that "[t]here has been no allegation that appellant was physically or mentally unable to understand the meaning of his consent to take the blood and urine tests or that appellant's consent was invalid due to police coercion, duress or deception." *Id.* at 1237.

To the contrary, Appellee herein argues that a second chemical test of a motorist suspected of operating his vehicle while under the influence of alcohol may be requested only when there are problems with the initial test or other special circumstances make a second test reasonable. Appellee further claims that the result of his second blood test was properly suppressed because the Commonwealth failed to prove by clear and convincing evidence that he "unequivocally, voluntarily, and knowingly relinquished a known right and consented to the second blood test." Brief for Appellee at 2.

Upon our review of the record, we find that the suppression court erred in concluding that under the facts of this case, the Commonwealth failed to establish Appellee's consent to the second blood test was not voluntary. First, the plain language of 75 Pa.C.S.A. § 1547(a) notes that a driver is deemed to give consent to one **or more** chemical tests of blood for the purpose of determining the alcoholic content of blood if the police officer has reasonable grounds to believe that person is under the influence of alcohol when operating his vehicle. Herein, Trooper Quiroz testified he detected an odor of alcohol on Appellee's breath and noticed his speech was slurred at the accident scene. He provided Appellee with his *O'Connell* warnings, and Appellee agreed to the initial blood draw. Appellee was informed less than thirty minutes later and just outside the hospital doors after Trooper Quiroz received a telephone call that the Assistant District Attorney requested a second blood test, and Appellee immediately consented to the second blood draw.

Officer Quiroz testified Appellee had in no way been coerced prior to consenting, nor did he believe Appellee had been rendered incapable of making such an informed consent at that time due to injury or other mental infirmity. To the contrary, Trooper Quiroz described Appellee as "very cooperative." Yet, despite the uncontradicted testimony of Trooper Quiroz and the suppression court's own conclusion as a matter of law that Trooper Quiroz was not required to "advise" Appellee prior to the time the second chemical test had been administered, the suppression court inexplicably found Trooper Quiroz's failure to do so "argues against valid consent." Conclusion of Law, filed 7/18/12, at ¶ 14. As such, we find that under the totality of the circumstances, the suppression court erred in failing to find Appellee's consent to the second blood draw was "unequivocal, specific and voluntary." *Dunne, supra,* at 1237.

Moreover, in *O'Connell,* our Supreme Court held that when an arrestee **refuses** to take a breathalyzer test, the police must inform the arrestee that his license will be suspended for one year. As such, we find the need for *O'Connell* warnings was not triggered in the current situation, for those warnings need only be given to an arrestee when the arrestee refuses to submit to a test to determine the alcoholic content of blood, whether it is a breathalyzer or actual blood test. Appellee has never disputed that Trooper Quiroz had

probable cause to believe Appellee was driving under the influence of alcohol. Moreover, Appellee never refused to submit to either the first or second blood test. Therefore, Trooper Quiroz did not have to notify Appellee of his *O'Connell* warnings, and the suppression court erred in suppressing the results of the second BAC test.

We hold further that there is no requirement on law enforcement to give a second *O'Connell* warning where there is a request for a second blood test.

Order granting Appellee's motion to suppress the results of the second blood test reversed. Case remanded for further proceedings. Jurisdiction relinquished.

OLSON, J. CONCURS IN RESULT.