J-A08017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELMO PENA | : | No. 1452 EDA 2016 |

Appeal from the Order April 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  MC-51-CR-0013593-2015

BEFORE:   PANELLA, LAZARUS, JJ., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY STEVENS, P.J.E.:   **FILED JULY 21, 2017**

The suppression court speculates that Appellee Elmo Pena's hospital discharge papers, the sole medical records in evidence, which indicate a diagnosis of a "concussion," requires a finding as a matter of law that Appellee did not have the capacity to consent to the drawing and testing of his blood.

Therefore, the suppression court erred in finding that Appellee did not voluntarily and knowingly give actual consent to the drawing and testing of his blood.  As I would reverse the lower court's suppression of the blood test results on this basis, I respectfully dissent.

———————————————————————

[*] Former Justice specially assigned to the Superior Court.

With regard to whether a defendant's consent for a chemical blood test was voluntary, this Court has held as follows:

> In order for consent to be valid, it must be unequivocal, specific, and voluntary. The [defendant] must have intentionally relinquished or abandoned a known right or privilege. The burden is upon the Commonwealth to prove by clear and convincing evidence that valid consent was given by [the defendant]. The determination as to whether consent has been given voluntarily is a question of fact which must be determined in each case from the totality of the circumstances. This Court has held that the following factors should be considered in determining whether consent was given voluntarily: the setting in which the consent was obtained; what was said and done by the parties present; and the age, intelligence, and educational background of the person consenting.

*Commonwealth v. Gorbea–Lespier*, 66 A.3d 382, 387 (Pa.Super. 2013) (quotation marks, quotations, and citations omitted).

In concluding Appellee did not voluntarily and knowingly give actual consent for the blood draw and test, the suppression court held as follows:

> Appellee's health was drastically affected by the car accident. Due to his incapacity, he did not have the requisite knowledge of the right to refuse nor the understanding that the chemical test was to examine his blood for the presence of alcohol. The medical evidence accepted by the suppression court is dispositive. The court found that Appellee suffered a head trauma from the crash. The police officers and medical personnel testified that he had [a] laceration on his head and visibly constricted pupils. N.T., 8/13/15, at 29-30. Appellee was unable to sit up or review the consent forms, which Officer Shead had to hold in front of Appellee's face. His disoriented state is further demonstrated by his inability to correctly sign the implied consent forms. He initialed one consent form on the date line and made a marking on the second form[.]
>
> Given these facts, it is apparent Appellee's head trauma and related injuries impaired his ability to comprehend the risks involved with a chemical test. Appellee did not knowingly and voluntarily submit to a chemical test.

- 2 -

Suppression Court Opinion, filed 10/25/16, at 6.

Applying the appropriate standard of review, the suppression court's legal conclusion that Appellee did not validly consent to the blood draw was incorrect. *See In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013) (setting forth scope of review); *Commonwealth v. Miller*, 56 A.3d 1276 (Pa.Super. 2012) (setting forth standard of review when Commonwealth appeals from suppression order).

For instance, the suppression court reasoned that Appellee's health was drastically affected by the car accident and the medical evidence was dispositive on the issue of capacity to give consent. However, the sole "medical evidence" presented was Appellee's discharge papers, which indicated a discharge diagnoses of "concussion."[1] At the suppression hearing, no witness testified that Appellee was disoriented, unconscious, or unable to answer questions appropriately due to a concussion or otherwise. In fact, two police officers and a responding medic testified to the opposite.[2]

---

[1] Appellee also had a right ankle fracture, but the suppression court focused on the concussion portion of the discharge papers in rendering its ruling. *See* N.T., 8/13/15, at 48 (the court indicated that, once the court sees the word concussion, its interest is piqued); *Id.* at 59 (the court indicated that Appellee had a concussion and that was going to be an important part of its ruling).

[2] During the suppression hearing, in rendering its ruling, the suppression court noted that it found "all of the Commonwealth's witnesses credible and [the court] adopted their testimony as [to its] findings of facts." *Id.* at 64.

Thus, unlike the suppression court, I would not find that, as a matter of law, a concussion results in a finding of "incapacitation" to give consent under the facts of this case.[3]

Further, to the extent the suppression court buttressed its conclusion with the fact Appellee could not sit up to review the consent forms and the officer had to hold the forms in front of Appellee's face for them to be signed at the hospital, the uncontroverted evidence revealed that Appellee's immobility was related to the fact he was lying in a bed and wearing a neck brace, which had been applied "as a precaution," and not because of some mental incapacity. *Id.* at 22. Moreover, the suppression court points to Appellee's initialing of one of the consent forms on the date line, as opposed to the signature line, and the fact his signature on the second form was illegible as further evidence of Appellee's "disorientation." However, as noted, the uncontroverted evidence was that Appellee signed/initialed the documents while he was lying on a bed and wearing a neck brace.

Finally, I note the Majority points to the fact that Appellee did not review the consent forms or verbally respond that he understood them as further evidence of lack of consent. The Majority, however, has provided no

---

[3] In rendering its ruling, the suppression court noted that Appellee's incapacity was further demonstrated by the fact he was "in the hospital for three days due to a concussion." *Id.* at 64. However, Appellee's own testimony was that his three-day stay was attributed to a waiting period for the scheduling of a CAT scan (and not because he was suffering symptoms from the concussion as eluded to by the suppression court). *Id.* at 47-49.

authority for the legal precept that voluntary consent may be manifested only after a defendant reads the consent forms and gives verbal confirmation. In the case *sub judice*, Officer Shead read the forms to Appellee, thus making him aware of the content of the forms, and Appellee then immediately signed/initialed them. Under these facts, Appellee's signing/initialing of the forms is further evidence that Appellee consented to undergo the chemical blood test. ***See Gorbea–Lespier***, ***supra*** (indicating consent is a question of fact that must be determined from the totality of the circumstances).

Based on the evidence presented at the suppression hearing, as well as our standard of review, the suppression court erred in finding Appellee did not voluntarily and knowingly give actual consent to the drawing and testing of his blood. Therefore, as I would reverse the suppression court's grant of Appellee's motion to suppress on this basis, I respectfully dissent.