J-S23014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JERMAINE VEASY :
:
Appellant : No. 1100 EDA 2019

Appeal from the Judgment of Sentence Entered March 25, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000503-2018

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: Filed: October 1, 2020

Appellant Jermaine Veasy appeals from the judgment of sentence imposed following his conviction for driving under the influence (DUI)—highest rate of alcohol and related offenses at a non-jury trial. Appellant argues that the trial court erred by denying his pre-trial motion to suppress. We vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial.

The trial court set forth its factual findings regarding the suppression hearing as follows:

On November 5, 2017, at approximately 1:40 a.m., [Appellant] was observed traveling west on 10th Street in Marcus Hook Borough, Delaware County, Pennsylvania by Officer Daniel Barnett and Officer Daniel Pasley. The officers, while sitting in their patrol cars in a parking lot at the intersection of 10th Street and Church Street, noticed [Appellant's] white Mercedes-Benz was audibly operating at a high rate of speed. As they continued to observe [Appellant's] vehicle, the Officers noticed [Appellant's] vehicle did

not have headlights on in conditions that were dark and rainy. After pulling behind [Appellant], Officer Barnett witnessed as [Appellant's] vehicle came up on another vehicle at a high rate of speed and then went around a median on the road to travel into the oncoming traffic lane. Officer Barnett immediately attempted to pull [Appellant] over following these observations. [Appellant] stopped his vehicle two blocks later at around 10th Street and Blueball Avenue.

Officer Barnett noticed a strong odor of alcoholic beverages coming from the vehicle immediately upon making contact with [Appellant]. [Appellant] informed Officer Barnett of his license to carry a Smith & Wesson M&P firearm, located in the glove compartment. After checking [Appellant's] credentials, Officer Barnett returned to the vehicle and asked [Appellant] to step out. Officer Barnett then asked [Appellant] whether or not he had been drinking that evening, to which [Appellant] responded by asking, "What time is it?" [Appellant] had slurred speech and difficulty speaking throughout the encounter. Officer Barnett then requested [Appellant] undergo a series of three field sobriety tests. [Appellant] was compliant with the Officer but failed each of the three field sobriety tests administered. Officer Barnett then asked [Appellant] to submit to a Preliminary Breath Test (PBT) but was unable to get a proper readout from the device. Following [Appellant's] failure to complete the field sobriety tests, Officer Barnett placed him under arrest for suspicion of driving while intoxicated. [Appellant] was placed in the back of Officer Pasley's patrol car in handcuffs. Officer Barnett then requested [Appellant] submit to a chemical test of his blood, warning [Appellant] that his refusal "could" lead to the suspension of his license for "approximately 12 months." [Appellant] gave verbal consent to Officer Barnett's request. [Appellant] was transported by Officer Pasley to Crozer-Chester Medical Center. During the ride, Officer Pasley and [Appellant] made no conversation besides [Appellant's] request for his handcuffs to be loosened. At the hospital, [Appellant] was brought into an examination room and uncuffed by Officer Pasley, who warned him, "not to do anything stupid". A nurse extracted two vials of blood from [Appellant]. Later testing of the blood revealed a BAC of 0.239%.

Trial Ct. Op., 8/2/19, at 2-3 (record citations omitted). We add that Officer

Barnett testified that he did not read the DL-26B implied consent form to

Appellant because Appellant had already given his verbal consent to the blood draw. N.T. Suppress Hr'g, 9/20/18, at 40-41. Officer Barnett testified that it was his understanding that the DL-26B form is only used when a motorist is going to refuse. *Id.*

Appellant was later charged with DUI—general impairment, DUI—highest rate of alcohol, failing to use required lighting, driving at an unsafe speed, careless driving, reckless driving, and disregarding traffic lanes.[1] *See* Criminal Compl., 11/5/17; *see also* Criminal Information, 2/28/18. On March 29, 2018, Appellant filed an omnibus pretrial motion, which included a motion to suppress. Therein Appellant argued that pursuant to *Birchfield v. North Dakota*, ___ U.S. ____, 136 S. Ct. 2160 (2016), the trial court should suppress evidence of the blood test results, because the Commonwealth conducted an illegal, warrantless blood draw, and Appellant did not provide knowing, voluntary, or intelligent consent to the blood draw. *See* Omnibus Pretrial Mot., 3/29/18, at 1-4.

The trial court held a suppression hearing on September 20, 2018. At the end of hearing, the trial court held its decision under advisement. Additionally, the trial court ordered the parties to submit briefs containing their

---

[1] 75 Pa.C.S. §§ 3802(a)(1), 3802(c), 4302(a)(2), 3361, 3714(a), 3736(a), 3309(1), respectively.

arguments, which they did.[2] In his brief, Appellant argued that Officer Barnett's verbal implied consent warning, including the use of the word "could" instead of "will" for the driver's license suspension upon refusal, was inaccurate and therefore, Appellant did not voluntarily consent to the blood draw. Mem. of Law, 12/10/18, at 2, 7-11. On December 6, 2018, the trial court issued an order denying Appellant's motion to suppress.[3]

On January 25, 2019, the Commonwealth withdrew the charge of reckless driving and the case proceeded to a non-jury trial. The trial court held the verdict under advisement. On February 11, 2019, the trial court found Appellant guilty of DUI—general impairment, DUI—highest rate of alcohol, driving at an unsafe speed, and careless driving. The trial court found Appellant not guilty of the remaining charges.

---

[2] Appellant and the Commonwealth apparently served their briefs on the trial court without filing them as of record. After the trial court denied his motion to suppress, Appellant filed a copy of his brief, captioned "Defendant's Memorandum of Law in Support of Motion to Suppress" with the trial court on December 10, 2019.

[3] The trial court's order reads as follows: "AND NOW, to wit, this 6th day of December, AD, 2018, upon consideration of Defendant's Omnibus Pretrial Motion filed on March 29, 2018, and after a hearing thereon, it is hereby ORDERED and DECREED that said Motion is DENIED." Order, 12/6/18. The trial court's order does not include findings of fact and conclusions of law required under Pa.R.Crim.P. 581(I). However, we may "look at the trial court's Rule 1925(a) opinion to garner findings of fact and conclusions of law. Here, the trial court issued a 1925(a) opinion that adequately relates the court's findings of fact and conclusions of law." *Commonwealth v. Stevenson*, 832 A.2d 1123, 1126 (Pa. Super. 2003) (citation omitted).

On March 25, 2019, the trial court sentenced Appellant to twenty-three months' county intermediate punishment, of which 180 days were to consist of home confinement with electronic home monitoring, and a consecutive term of three years' probation. Appellant was also ordered to pay $1,550 in fines, $300 in court costs, and a $134 lab fee and to undergo a drug and alcohol evaluation.

On April 15, 2019, Appellant filed a timely notice of appeal. He filed an untimely court-ordered Pa.R.A.P. 1925(b) statement.[4] The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

Appellant raises two issues for our review:

1. Based on the totality of the circumstances relayed during the Suppression hearing, did the trial court commit an error of law in denying Appellant's motion to suppress?

2. Did the trial court err in denying Appellant's suppression motion when the arresting officer did not provide Appellant with the required opportunity to chose between yielding consent to a warrantless chemical test or, alternatively, refusing to yield[?]

---

[4] We note that the trial court ordered Appellant to file a Rule 1925(b) statement by May 7, 2019. Appellant filed his 1925(b) statement on May 15, 2019. Appellant did not request, nor did the trial court grant, an extension of time to file the 1925(b) statement. Therefore it was untimely filed. Under **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009) (*en banc*), the late filing of a Rule 1925(b) statement is *per se* ineffectiveness of counsel in criminal cases. **Burton**, 973 A.2d at 433; **accord** Pa.R.A.P. 1925(c)(3). Nevertheless, a remand is not necessary here since "the trial court has filed an opinion addressing the issue[s] presented in [Appellant's] 1925(b) concise statement." **Id.**

Appellant's Brief at 6-7 (unpaginated) (some capitalization omitted).[5]

We summarize Appellant's arguments together as they are closely related. Appellant argues that the trial court erred in denying his motion to suppress because Appellant did not voluntarily consent to the blood draw. Appellant's Brief at 13-23 (unpaginated). Appellant argues the trial court erred in not considering our Supreme Court's decision in **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017) in its analysis. **Id.** at 13 (unpaginated). More specifically, Appellant argues that the trial court erred in concluding that because Appellant immediately verbally consented to the blood draw, the arresting officer did not have to read the implied consent warnings from the DL-26B form to Appellant. **Id.** at 15 (unpaginated). Appellant argues that the facts of this case are comparable to those of **Commonwealth v. Krenzel**, 209 A.3d 1024, 1032 (Pa. Super. 2019), *appeal denied*, 222 A.3d 370 (Pa. 2019). **Id.** at 19 (unpaginated). In both **Krenzel** and this case, the drivers were pulled over and arrested for DUI after police administered field sobriety

---

[5] Appellant's brief lacks page numbers. Pa.R.A.P. 2173 requires that all pages of a brief, except for the table of contents and table of citations, to be numbered separately in Arabic figures. We have explained that "compliance with the Rules of Appellate Procedure concerning the briefs and reproduced record are not guideposts but a mandate." **McGee v. Muldowney**, 750 A.2d 912, 913 n.1 (Pa. Super. 2000) (citation omitted). However the lack of page numbers, and other technical defects of Appellant's brief, do not impede our review. **See Commonwealth v. Levy**, 83 A.3d 457, 461 n.2 (Pa. Super. 2013) (noting that despite the defects in appellant's brief, appellant "has presented to this Court a thorough and well-developed brief in support of his arguments. Thus, [the appellant's] omissions do not impede our review. Accordingly, we do not find them to be 'substantial,' and we will not exercise our discretion to quash or dismiss his brief." (citations omitted)).

tests.  ***Id.*** (citations omitted).  Appellant states that neither he nor Krenzel were informed of their rights under 75 Pa.C.S. § 1547.  ***Id.*** at 20 (unpaginated).  Appellant argues that the police are "statutorily obligated" under 75 Pa.C.S. § 1547 to inform a suspect of the "right to refuse chemical testing and the consequences arising therefrom" and the failure to do so is grounds to suppress the blood draw.  ***Id.*** (quoting ***Krenzel***, 209 A.3d at 1032).

Appellant also argues that the Commonwealth's reliance on ***Commonwealth v. Gorbea-Lespier***, 66 A.3d 382 (Pa. Super. 2013), to establish that he consented to the blood draw is in error.  ***Id.*** at 20-22 (unpaginated).  According to Appellant, in ***Gorbea-Lespier***, the defendant was informed that a refusal to submit to the test would result in a minimum twelve month license suspension.  ***Id.*** at 21 (unpaginated) (citing ***Gorbea-Lespier***, 66 A.3d at 384).  Here, Appellant contends that Officer Barnett informed him that a refusal to submit to the blood test "could" result in a license suspension of "up to twelve months" instead of informing him that refusal will result in a twelve month license suspension.  ***Id.*** (citation omitted).  Appellant additionally notes that in ***Gorbea-Lespier***, the defendant was informed that he did not have a right to consult with anyone, including an attorney prior to testing, while here Officer Barnett did not provide the statutorily required warning that Appellant did not have a right to consult anyone, including an attorney, before choosing to consent to the blood test.  ***Id.*** at 21-22 (unpaginated) (citing ***Gorbea-Lespier***, 66 A.3d at 384).

Lastly, Appellant essentially argues that Officer Pasley, who escorted Appellant to the hospital for the blood draw, also failed to provide Appellant with the necessary implied consent warnings at the time of the blood draw, which is tantamount to a separate statutory violation supporting the suppression of the blood draw as nonconsensual. *Id.* at 22-23 (unpaginated). Appellant claims that implied consent warnings should have been given at the time of the blood draw, which Officer Pasley did not do. *Id.* (citing *Myers*, 164 A.3d at 1174 (plurality)).

The Commonwealth responds that under 75 Pa.C.S. § 1547(a), a motorist is deemed to have consented to chemical testing and a police officer has the duty to inform the driver that his or her driver's license will be suspended upon refusal. Commonwealth's Brief at 7-8. According to the Commonwealth, the officer had no duty to read the implied consent warnings to Appellant because Appellant never refused his consent. *Id.* at 8 (citing *Gorbea-Lespier*, 66 A.3d at 390). Furthermore, the Commonwealth argues that the trial court's finding that Appellant's consent was voluntary was correct based on the facts in the record. *Id.* at 9-10, 13-14. The Commonwealth further contends that although Officer Barnett's statements to Appellant deviated from the implied consent warnings contained in the DL-26B form, the deviation did not affect Appellant's decision to consent to the blood draw. *Id.* at 11. The Commonwealth argues that *Krenzel* is distinguishable from the facts of this matter because in *Krenzel* the police did not provide the defendant with the implied consent warnings at all, while in this case, Officer

Barnett did provide a warning. *Id.* at 12-13. The Commonwealth argues that although Officer Barnett's warnings differed from those contained in the DL-26B form, Officer Barnett sufficiently advised Appellant of the consequences of refusal and Appellant consented to the blood test. *Id.* at 13-14.

We apply the following standard when reviewing the denial of a suppression motion:

> [o]ur initial task is to determine whether the [trial court's] factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (citation omitted). In addition, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa. Super. 2016) (citation omitted).

"The United States Supreme Court has held that because 'the taking of a blood sample' is a search within the meaning of the Fourth Amendment to the United States Constitution, police officers may not compel the taking of a blood sample without a search warrant, absent an applicable exception." *Commonwealth v. Haines*, 168 A.3d 231, 234 (Pa. Super. 2017) (quoting *Birchfield*, ___ U.S. at ____, ____, 136 S. Ct. at 2173, 2185 (footnote omitted)). "One such exception is consent, voluntarily given."

*Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citation omitted); *see also Myers*, 164 A.3d at 1178 (plurality) (explaining that *Birchfield's* holding "supports the conclusion that . . . an individual must give actual, voluntary consent at the time that testing is requested").[6]

In determining whether Appellant provided voluntary consent to the warrantless blood test, we note:

> [i]n determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.
>
> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

---

[6] Only section II(C) of *Myers* is a plurality opinion. *Myers*, 164 A.3d at 1164, 1173-81. A majority of our Supreme Court joined the remainder of the decision. *Id.* at 1164.

*Commonwealth v. Venable*, 200 A.3d 490, 497-98 (Pa. Super. 2018) (citations omitted).

The following Motor Vehicle Code provisions address circumstances in which an individual arrested for DUI refuses to submit to chemical testing:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.—**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of . . . 3802 (relating to driving under influence of alcohol or controlled substance). . . .

**(b) Civil penalties for refusal.—**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person. . . .

(2) **It shall be the duty of the police officer to inform the person that**:

(i) **the person's operating privilege will be suspended upon refusal to submit to chemical testing** and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547 (emphases added).

- 11 -

In *Gorbea-Lespier*, this Court considered the issue of whether a motorist's consent to a first blood draw after being given implied consent warnings extends to a second blood draw. *Gorbea-Lespier*, 66 A.3d at 384-85. In that case the defendant was involved in a two vehicle accident. *Id.* at 384. The defendant was arrested for suspicion of DUI and transported to a nearby hospital. *Id.* On the way to the hospital, the state trooper advised the defendant of the implied consent warnings and defendant consented to a blood test. *Id.* About thirty minutes after the defendant's blood was drawn, a supervisor requested that the state troopers obtain a second blood draw. *Id.* at 385. The troopers did not read the defendant the implied consent warnings a second time before the second blood draw. *Id.* The *Gorbea-Lespier* Court found that under the plain language 75 Pa.C.S. § 1547(a) "a driver is deemed to give consent to one **or more** chemical tests of blood for the purpose of determining the alcoholic content of blood if the police officer has reasonable grounds to believe that person is under the influence of alcohol when operating his vehicle." *Id.* at 389 (emphasis in original). The *Gorbea-Lespier* Court further noted that under *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989), the police only have to inform a motorist of the consequences of refusing a breathalyzer test upon the motorist's refusal. *Id.* Therefore, this Court found that the defendant consented to the second blood draw and there was no need for the police to give him a second implied consent warning. *Id.* at 389-90.

Subsequently, in **Myers**, our Supreme Court examined Section 1547,

and determined that

> [b]y operation of the implied consent statute, once a police officer establishes reasonable grounds to suspect that a motorist has committed a DUI offense, that motorist shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance. Notwithstanding this provision, Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences.
>
> Under this statutory scheme, a motorist placed under arrest for DUI has a critical decision to make. The arrestee may submit to a chemical test and provide the police with evidence that may be used in a subsequent criminal prosecution, or the arrestee may invoke the statutory right to refuse testing, which: (i) results in a mandatory driver's license suspension under 75 Pa.C.S. § 1547(b)(1); (ii) renders the fact of refusal admissible as evidence in a subsequent DUI prosecution pursuant to 75 Pa.C.S. § 1547(e); and (iii) authorizes heightened criminal penalties under 75 Pa.C.S. § 3804(c) if the arrestee later is convicted of DUI. **In very certain terms, this Court has held that, in requesting a chemical test, the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision. _See O'Connell_**, 555 A.2d at 877-78. An arrestee is entitled to this information so that his choice to take a chemical test can be knowing and conscious. **_Id._** at 878. The choice belongs to the arrestee, not the police officer.

**Myers**, 164 A.3d at 1170-71 (some citations and footnote omitted, some

formatting altered) (emphasis added).

More recently in **Krenzel**, this Court interpreted Section 1547 and

**Myers** as requiring the police to inform suspects arrested for DUI of their right

to refuse chemical testing in order for consent to be valid. **_See Krenzel_**, 209

A.3d at 1031-32 (holding that the trial court erred as a matter of law in finding that the defendant's consent to a blood draw was voluntary where she was in custody and the police asked her to submit to a blood draw **without** providing a recitation of the defendant's rights under 75 Pa.C.S. § 1547, reading the DL-26B implied consent form, or by confirming her consent in writing). In **Krenzel**, the officer did not read any part of the DL-26 implied consent form to the defendant, and he asked for her consent to the blood test and the defendant consented. **Id.** at 1031. The **Krenzel** Court concluded that the defendant could not make a knowing choice of whether to submit to a blood draw when an officer fails to recite the Section 1547 rights informing the defendant of her right to refuse chemical testing. **Id.** at 1032.

Here, the trial court held that:

Because [Appellant] gave verbal consent immediately upon the request of the officer, there was no need to read the DL-26B form. [**Gorbea-Lespier**, 66 A.3d at 389-90]. Additionally, because [Appellant] consented to the blood test, Officer Barnett's statements were not misleading and did not affect [Appellant's] decision. **Peppelman v. Commonwealth**, 403 A.2d 1041, 1042 (Pa. Cmwlth. Ct. 1979).

Officer Barnett and Officer Pasley did not have a general duty to inform [Appellant] of his right to refuse chemical testing of his blood. Police officers only have a duty to warn individuals of the consequences of their right to refuse, if they refuse the test. In [**O'Connell**], the Supreme Court of Pennsylvania held that police officers have a duty to inform citizens of the potential consequences of refusal. Following the decision by the Supreme Court of the United States in [**Birchfield**] the standards formed under **O'Connell** were modified slightly as to prevent defendants from facing both civil and criminal penalties as a result of refusing to consent to a chemical test of their blood. Later, in [**Gorbea-Lespier**], the Superior Court of Pennsylvania held that a

- 14 -

defendant must only be informed of their right to refuse chemical testing and consequences of doing so **after** they have already attempted to refuse. ***Gorbea-Lespier***, 66 A.3d at 389-90.

\* \* \*

Here, Officer Barnett and Officer Pasley did not have a duty to inform [Appellant] of his right to refuse and the consequences of doing so because [Appellant] never refused testing. After being placed into custody, Officer Barnett requested that [Appellant] submit to a blood test. In response, [Appellant] verbally agreed to give blood. He did not become argumentative, confused, or even ask for his attorney; instead he continued to show the same level of compliance displayed throughout the entire encounter. While being transported to the hospital by Officer Pasley, [Appellant] made no statements that indicated he would withdrawal the consent given to Officer Barnett. At the hospital, [Appellant] remained compliant with the requests of Officer Pasley, and allowed the nurse to withdrawal blood without issue. [Appellant's] own testimony at the hearing for his Motion to Suppress offers no evidence suggesting that he otherwise tried to refuse. At no time, before, during, or after the drawing of [Appellant's] blood, did [Appellant] attempt to retract his consent and refuse a blood test. Because [Appellant] never refused or attempted to refuse a blood test, Officer Barnett and Officer Pasley never had a duty to inform him of his right to refuse and the consequences of doing so.

[Appellant] also argues that Officer Barnett's extemporaneous statements violated his right to informed consent, by leading defendant to inaccurately believe that his license "could be" suspended, as opposed to the more precise and accurate term "would be." [Appellant] cites to case law showing that Pennsylvania courts have not only imposed a high standard of care on the warnings to be given to defendants in this situation, but even that the "could be" and "would be" difference argued here is in violation of this standard. Still, Officer Barnett's statements do not represent a violation of [Appellant's] right to informed consent, even if improper, because under ***O'Connell*** and its progeny, police only have a[] duty to inform a defendant of their rights to refuse after they have begun to refuse or become uncompliant.

- 15 -

Trial Ct. Op. at 4-7 (some citations and parentheticals omitted). The trial court also rejected Appellant's argument that his consent was not knowing, intelligent, and voluntary because Officer Barnett's implied consent warnings were defective, stating:

> [Appellant] was made aware of his right to refuse. Officer Barnett informed [Appellant] of his right to refuse as he was making his initial request to [Appellant] to submit to a blood test. [Appellant] testifies that he was never told he could refuse testing. This court has already expressed that Officer Barnett's testimony is more credible. Additionally, [Appellant] argues in a separate issue, discussed, *supra*, that his consent was reliant on the Officer Barnett's use of the language "could" instead of "will" when informing him of his right to refuse. Therefore, it seems that [Appellant] does in fact recall Officer Barnett informing him of his right to refuse chemical testing.

*Id.* at 10 (record citations omitted).

Here, the trial court's reliance on *Gorbea-Lespier* was in error. In that case, this Court interpreted *O'Connell* as requiring that police only give a motorist implied consent warnings upon a refusal to submit to chemical testing. *See Gorbea-Lespier*, 66 A.3d at 389-90. In *Myers*, our Supreme Court explained that when a police officer requests that an arrestee submit to a chemical test, the officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision. *See Myers*, 164 A.3d at 1171. The *Myers* Court held that "[a]n arrestee is entitled to this information so that his choice to take a [chemical] test can be knowing and conscious." *See id.* (citation omitted). This Court, applying *Myers*, subsequently held that an arrestee

- 16 -

cannot make a knowing and conscious choice of whether to submit to a blood draw when an officer does not inform the arrestee of his or her "right to refuse chemical testing and the consequences arising therefrom . . . ." **See Krenzel**, 209 A.3d at 1032.

Here, the trial court considered various factors and concluded that the police did not coerce Appellant, he fully cooperated, and he did not appear confused by Officer Barnett's request. However, the primary issue is whether Officer Barnett complied with his statutory obligation to inform Appellant of his "right to refuse chemical testing and the consequences arising therefrom." **See id.** In **Krenzel**, this Court concluded that where an officer does not inform an arrestee of his or her statutory rights to refuse chemical testing and the consequences arising therefrom, the arrestee cannot have made a knowing choice regarding whether to submit to the blood draw. **See id.**

Officer Barnett testified that he informed Appellant that a refusal of the blood test "could" lead to the suspension of his license for "approximately 12 months." N.T. Suppress Hr'g at 17, 19. However, this warning was inaccurate, as a refusal **will** lead to a driver's license suspension of 12 months for a first time offender and 18 months for a second time offender. **See** 75 Pa.C.S. § 1547(b)(1), (b)(2)(i). Additionally, Officer Barnett did not inform Appellant that he did not have the right to consult with an attorney before making his decision. N.T. Suppress Hr'g at 19; **see also Myers**, 164 A.3d at 1171 (stating the police must "notify the arrestee that there is no right to consult with an attorney before making a decision.") Therefore, Officer

- 17 -

Barnett's description of the consequences of refusal did not comply with his statutory obligations under Section 1547(b). Lastly, neither Officer Barnett nor Officer Pasley obtained Appellant's written consent to the blood draw.

While in **_Krenzel_**, the officer failed to inform the arrestee of her right under Section 1547 to refuse chemical testing and the consequences of refusal, here, Officer Barnett provided Appellant with incomplete information. **_See Krenzel_**, 209 A.3d at 1031-32. Due to the above described incompleteness of the police warnings, we conclude that Officer Barnett did not comply with his statutorily mandated duty to inform Appellant of his right to refuse the blood test and the consequences of refusal. Therefore, because he was misinformed about his rights, we hold that Appellant did not make a knowing and conscious choice of whether to submit to the blood draw.

For the foregoing reasons, and in light of **_Krenzel_**, we are constrained to conclude that the trial court erred in denying suppression. **_See Bryant_**, 67 A.3d at 724 (stating we may reverse only if the trial court's legal conclusions drawn from its factual findings are erroneous).

Judgment of sentence vacated. Order denying suppression motion reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/1/20